**Robert Wayne TURNBOW, Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defendant in Error.**

**No. A–14830.**

Court of Criminal Appeals of Oklahoma.

Feb. 26, 1969.

Don Anderson, Public Defender, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Reid Robison, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

Robert Wayne Turnbow, hereinafter referred to as defendant, was charged, tried, and convicted, in the District Court of Oklahoma County, of the crime of Rape in the First Degree. He was sentenced to serve 99 years in the State Penitentiary, and from said judgment and sentence, a timely appeal has been perfected to this Court.

Briefly stated, the facts adduced on the trial reveal that the complaining witness testified that on April 17, 1967, she was in a laundromat on Southwest 29th Street in Oklahoma City, waiting for clothes to dry, at approximately 10:00 or 10:30 p. m. She testified that she was alone when a man, whom she identified as defendant, walked in, made a few remarks, and stood near her. The man waited five minutes; approached the witness with a knife; told her not to scream; threatened that if she did scream he would use the knife on her; and told her to get up from her chair and go to the back of the laundromat to the restroom. The defendant then told this witness to take off her clothes and again threatened her with the knife, whereupon she complied. The defendant then told the totally naked woman, to put her foot upon the stool, told her not to make any noise, then had sexual relations with her. He then told this witness to lay down on the floor, and had her commit oral sodomy. Defendant then had sexual relations with this witness on the floor. The defendant then told the witness not to leave the restroom or he would use the knife on her and anyone else who might

have entered the laundromat. Shortly thereafter, this witness went to the South Community Hospital, where she was examined by Dr. William Moore. Dr. Moore took a vaginal smear from this witness, which was found to contain sperm.

Thereafter, another witness testified that on May 20, 1967, she had been in a laundromat at 4900 South May Avenue in Oklahoma City, Oklahoma, with her three year old son. She testified that the defendant had been loitering in the laundromat and had attempted to make idle conversation and had asked her to go to the ladies' restroom to look for a billfold. This witness refused and the defendant pulled out a knife and held it to her throat, with the blade extended. He then told the witness to take her boy and go back to the restroom in the rear of the laundromat. This witness refused and upon her refusal, the defendant picked up the young boy and cut his throat slightly, whereupon this witness yielded to defendant's demands. As she approached the restroom, another couple was seen by the defendant to be entering the laundromat, and defendant fled.

Another witness testified that on May 26, 1967, she was in a laundromat at 2616 Southwest 29th Street in Oklahoma City, Oklahoma, at approximately 10:00 p. m., with her two little girls. There were no other persons in the laundromat at this time and the defendant came in and sat watching her. The defendant asked this witness whether or not she 'had seen a billfold, and then moved on her with a knife. He then told this witness to take her children and move back to the restroom. The children were frightened and resisted, but went with their mother. Once in the restroom, the defendant told this witness to take off her clothes, even though the two children were present, and even though this witness was eight months pregnant at the time. The knife at this time was at her throat and this witness complied. The defendant told her to put her foot up on the toilet stool and then had sexual relations with this witness. Soon thereafter, he had this witness com-

mit oral sodomy and finally had further intercourse with her.

There are several assignments of error which we will deal with in the order in which they arose in the trial court, and not in the order in which they were presented in the brief of defendant.

■ The first assignment of error deals with the frequently raised contention that the jurors selected to try the defendant were volunteer jurors in that some members of the jury panel who had participated in the trial of cases two weeks prior to the order of the District Court extending the term of jury service for six days, were excused from the panel. Here, as in Hill v. State, Okl.Cr., 443 P.2d 126; Satchell v. State, Okl.Cr., 443 P.2d 125; and Bickerstaff v. State, Okl. Cr., 446 P.2d 73, the defendant has failed to preserve the voir dire examination of the jurors and has wholly failed to demonstrate how he was prejudiced in the selection of the jury. For the reasons set forth in those opinions, we are of the opinion that this assignment of error is wholly without merit.

■ This leads us to a consideration of the defendant's contention that since the defendant was shown to have had sexual intercourse with the complaining witness twice during the same evening, the trial court erred in refusing to require the State to elect upon which act it would rely for conviction, as required under our ruling in Cody v. State, Okl.Cr., 361 P.2d 307, 84 A.L.R.2d 997, and cases cited therein. The rationale of this rule is that *Cody* sets forth the general rule to which there are certain well recognized exceptions. These exceptions were recognized in McManus v. State, Okl.Cr., 297 P. 830, and Shapard v. State, Okl.Cr., 437 P.2d 565, which, in each instance, involved the gang rape of a prosecutrix by several defendants acting in concert. In each of these cases the court treated such acts as being a single continuous act. In the instant case the first and second acts of sexual intercourse between the complaining witness and the defendant, occurred within

a span of a few minutes and under the rationale set forth in McManus v. State and Shapard v. State, supra, we are of the opinion that they constitute being a single offense. We are therefore of the opinion that this assignment of error is without merit.[1]

It is lastly contended that the trial court erred in admitting the testimony of two other witnesses which has heretofore been set forth in the summary of facts, as being evidence of other crimes. The defendant relies upon Hall v. State, 67 Okl. Cr. 330, 93 P.2d 1107, wherein this Court held:

"In criminal prosecutions, involving sexual crimes, it is not competent or permissible to show an evil disposition inclining defendant toward that particular crime, by acts totally disassociated with, and far remote in time from, the act of which he is accused, and against an entirely different female."

He cites as further authority the cases of Miller v. State, Okl.Cr., 295 P.403; Brockman v. State, 60 Okl.Cr. 75, 61 P.2d 273; Landon v. State, 77 Okl.Cr. 190, 140 P.2d 242; Bunn v. State, 85 Okl.Cr. 14, 184 P.2d 621; and Harris v. State, 88 Okl.Cr. 422, 204 P.2d 305.

∎ We believe that the testimony in the instant case was properly admitted by the trial court under the exception to the general rule, as summarized so succinctly in the Court's syllabus in Rhine v. State, Okl.Cr., 336 P.2d 913, to-wit:

"1. As a general rule, in the prosecution of one accused of a particular offense, evidence showing or tending to show the commission by accused of another crime or crimes entirely distinct and independent of that for which he is on trial, even though it be a crime of the same class, is neither relevant nor admissible.

2. An exception to the general rule exists when the evidence of similar offenses tends to show a system, plan, or scheme embracing the commission of two or more crimes so related to each other that the proof of one tends to establish the other.

3. In a prosecution for rape, evidence of similar offenses which shows that in the commission of the offense the accused used a system or plan characterized by a peculiar method of operation tends to establish the offense charged and is admissible on that basis."

The peculiar method employed in each of the instances testified to by the three women, can readily be seen in that (1) they all occurred in a laundromat; (2) on each occasion the women were threatened by a knife; (3) they were all directed to the restroom where, in two instances, they were required to disrobe, place one foot on the toilet stool and were criminally assaulted in that position; and (4) in the two instances they were forced to commit acts of oral sodomy.

∎ Having concluded that this assignment of error is without merit, this leads us to a consideration of the defendant's contention, also argued under his third assignment of error, that the punishment imposed was excessive, in that the facts in the instant case were not as aggravated as those in another rape case for which the defendant was convicted, prior to this trial, and sentenced to 40 years imprisonment. The absurdity of such contention in the light of the bestial, depraved acts of the defendant, can readily be seen from even the most cursory examination of the record. The defendant could have received the death penalty in the instant case and had such sentence been imposed, this author would have no hesitation in preparing the death warrant. In all probability, it was only the consummate skill of the Public Defender in the preparation and presentation of the defendant's case which saved him from such fate.

1. Although not raised as an issue in Ramos v. State, Okl.Cr., 445 P.2d 807, this Court treated several acts of intercourse between the prosecutrix and the defendant, Ramos, occurring over a 26 hour period of time, as constituting but a single act of rape.

For all of the reasons above set forth, the judgment and sentence appealed from is AFFIRMED, and the Clerk of this Court is directed to transmit a copy of this Opinion to the Department of Corrections for their consideration, should the defendant *EVER* seek parole.

BRETT, P. J., and NIX, J., concur.