**Dewey Lavoy HURD, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–17440.**

Court of Criminal Appeals of Oklahoma.

Oct. 25, 1972.

Don Anderson, Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Kay Karen Kennedy, Legal Intern, for appellee.

BUSSEY, Presiding Judge:

Appellant, Dewey Lavoy Hurd, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Oklahoma County, Oklahoma for the offense of Rape in the first-degree, After Former Conviction of a Felony; his punishment was fixed at thirty-five (35) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Theresa Swinney, a forty (40) year old divorcee, testified that at approximately 9:30 p. m. on August 17, 1971, she stopped at a service station, located at 25th and South Western in Oklahoma City,

a station where she had never traded before. The defendant, an employee at the station filled her automobile with gas. He started talking to her and "was rather flirtatious" (Tr. 5). She paid for the gas, defendant brought the change back and cleaned her windshield. He jumped in the car on the passenger side, told her to be quiet and she would be alright. He directed her to drive across the street to a liquor store. He ordered her to go into the store with him, wherein he purchased a bottle of liquor. Upon leaving the store he directed her to drive straight down the street. As they approached a drive-in movie the defendant told her to turn into the entrance. The defendant purchased the tickets and told her to park the car toward the back of the drive-in. They remained at the movie for approximately an hour or two. During which time the defendant "drank quite a bit and he was talking." She testified that she did not attempt to get out of the car because she was afraid. The defendant scooted over her and drove the car when they left the drive-in. The defendant held her arm and told her to be quiet and everything would be alright. The defendant stopped in front of a two-story white house and drug her out of the car and up the stairs. When they reached the defendant's apartment they started fighting and the defendant struck her several times on her arm, her breast, and on the side of her head. The defendant pulled her outer clothing off and ripped her underpants off. He then threw her on the bed and raped her. She testified that she screamed and continued to resist. After completing the act of intercourse, he held her arm and told her to stay right there next to him. When the defendant fell asleep, she grabbed her slacks, put them on and wrapped a towel around her and ran outside. She flagged down a car, reported what had happened and the police were called.

Officer UpChurch testified at 4:09 a. m. on the morning in question, he answered a call and went to 35th and South Walker. Upon arriving he observed Mrs. Swinney in a 1963 red Falcon station wagon which was driven by another lady. Mrs. Swinney had on a pair of black slim jeans which were inside out and a sweater which she had taken from the back seat of the station wagon. She appeared to be in a state of shock and was hysterical. He testified that it was approximately one hour before he could calm her down enough to get any information from her. After a discussion with the other lady, he proceeded to an upstairs apartment at 816 West Commerce. He knocked on the door, and after receiving no answer he entered the apartment, turned on the lights and observed the defendant lying naked on the bed. He observed a pair of woman's under garments in shreds, a woman's bra and blouse turned inside out and a pair of woman's shoes lying on the floor. Mrs. Swinney's purse was found sitting in a chair in the corner. He testified that the screen had been pushed out of the door leading to the defendant's apartment and it was only hanging from one hinge.

Officer Bevel identified the pictures which he took at the scene and a photograph of Mrs. Swinney's left arm.

Officer Stinson identified three polaroid pictures he took of Mrs. Swinney some three days later.

Dr. Petrie testified that he was Mrs. Swinney's personal physician and was called to Baptist Hospital to examine her in the early morning hours of August the 18th. He testified that she was "a hysterical woman who was, shall we say, thoroughly beaten up, clothes torn and dirty." He testified that he found multiple contusions over her body, her arms, chest, hip, and on her inner thigh. He testified that internal pelvic examination disclosed presence of spermatozoa. He testified that in his opinion, she had recent intercourse.

For the defendant, Douglas Shockley testified that he operated a service station at 25th and South Western and employed the defendant to help him in the evenings. At approximately 9:00 p. m. on the evening in question the woman drove into the

station and parked in the middle of the drive. The defendant went up to wait on her and talked to her for approximately thirty (30) minutes. The woman leaned over and either opened the door or unlocked it and the defendant got into the car. They drove across the street to a liquor store and the defendant went inside. The defendant came back out and got into the car and they drove off very slowly.

 The sole proposition asserts that the evidence was insufficient to sustain the verdict. In Bryant v. State, Okl.Cr., 478 P.2d 907, we stated:

"This Court has consistently held that a conviction for rape may be had on the uncorroborated testimony of the prosecutrix or on slight corroboration, where the testimony of the prosecutrix is not inherently improbable or unworthy of credence."

Haga v. State, Okl.Cr., 422 P.2d 221; Gaines v. State, Okl.Cr., 267 P.2d 612; the many cases sighted therein. However, this rule has been limited to the effect that we will carefully examine the record in the cases of this character, to see that the evidence of the prosecutrix is clear and convincing, and is not inconsistent, incredible or contradictory. It is the exclusive province of the jury to weigh the evidence and determine the facts and, where the verdict is based on probable testimony, the reviewing court will not interfere with the verdict, though there is a sharp conflict in the evidence. In the instant case, the evidence of the prosecutrix, Mrs. Swinney was corroborated. Mrs. Swinney testified that in the struggle prior to the act of intercourse the defendant struck her arm, breast, and the side of her head. The photographs which were introduced at the trial reflect that Mrs. Swinney did in fact receive such injuries. The medical testimony of Dr. Petrie adduced that she had been beaten and that she had recently engaged in sexual intercourse. Officer UpChurch testified that when he first observed her, she was partially clothed and was in a hysterical condition. He further testified that he found a pair of ripped ladies panties, a bra, blouse, turned inside out, lying on the floor of the defendant's room.

We therefore conclude that the evidence was sufficient to support the verdict of the jury. The judgment and sentence is affirmed.

BRETT, J., concurs.