**Leonard J. WOODRUFF, Jr., Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–74–652.**

Court of Criminal Appeals of Oklahoma.

April 15, 1975.

Rehearing Denied May 6, 1975.

Stephen Jones, Enid, for appellant.

Larry Derryberry, Atty Gen., Bill Bruce, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Leonard J. Woodruff, Jr., hereinafter referred to as defendant, was

charged, tried and convicted in the District Court, Carter County, Case No. CRF–74–7, for the offense of Unlawful Delivery of a Controlled Drug, in violation of 63 O.S. 1971, § 2–401(B). The jury fixed his punishment at a term of two (2) years' imprisonment and assessed a fine of Five Hundred ($500.00) dollars. From said judgment and sentence, a timely appeal has been perfected to this Court.

The State's only witness at trial was Gaylon Hayes. His testimony revealed the following facts. He was employed with the Oklahoma State Bureau of Investigation as an agent in the Drug Enforcement Division. In the early morning hours, around 12:30 a. m., September 30, 1973, he had occasion to be at "My Brothers Place" located on Highway 77 east of Ardmore, Oklahoma. At that time he met one Hilton Whitfield and the defendant who were both inside the club. Thereafter he followed the defendant and Whitfield outside the club at which time the defendant asked Hayes what he wanted. He told the defendant he would like some "crystal." The defendant asked Hayes how much he wanted and Hayes replied, "How does it come . . . in dime bags?" (Tr. 19) The defendant replied in the affirmative and asked how much he wanted. Hayes then related to the court that a dime bag was worth approximately $10.00 and he then testified he told the defendant he would take two dime bags. Thereafter the defendant told him that he did not have anymore at that time and that he would have to go get some. While still outside of "My Brothers Place," around 1:30 a. m., the defendant and co-defendant West and a Ms. Southern approached him and introductions were made. After the introductions the defendant returned inside the club. After Hayes' conversation with Mr. West, Mr. West re-entered the club, returned and handed him two cellophane bags containing Amphetamine. Hayes testified he did not know where the defendant was at the time of the sale. The witness then identified State's Exhibit No. 1 as the Amphetamine

he received from Mr. West and the defense stipulated to the chain of custody from the witness to the chemist of the Oklahoma State Bureau of Investigation, and that it was Amphetamine under Schedule II of the Uniform Controlled Dangerous Substances Act. Hayes then testified that he returned to Oklahoma City and later had occasion to see the defendant and co-defendant West on October 1, 1973, at Jonesy's Drive Inn in Norman, Oklahoma. Hayes testified that at Jonesy's Drive Inn, on that date, he purchased two grams of Amphetamine from the defendant and Mr. West, the said Amphetamine being introduced as State's Exhibit No. 2.

The State then rested.

The defendant demurred to the evidence and said demurrer was overruled.

■ Defendant's first proposition asserts that it was error for the trial court to admit evidence of subsequent unlawful acts of the defendant in Norman. Defendant specifically asserts that evidence was improperly admitted which tended to show an unlawful delivery and/or sale of Amphetamine by the defendant and Mr. West, and further that such evidence does not fall within one of the common exceptions in which evidence of prior or subsequent wrongful acts may be admissible. In the case of Moulton v. State, Okl.Cr., 476 P.2d 366 (1970), we stated:

"The general rule in this state is that when a defendant is put upon trial for one offense he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone and the admission of evidence of other crimes, either prior or subsequent to the offense for which he is on trial is inadmissible. However, evidence of separate and similar offenses is admissible when it is material and proper to show (1) motive, (2) intent, (3) absence of mistake or accident, (4) identity of person charged with the commission of the crime for which an accused is put on trial, and (5) common scheme or plan embracing the

two or more crimes so related to each other that proof of one tends to establish the other. See Epperson v. State, Okl. Cr., 406 P.2d 1017; Parks v. State, Okl. Cr., 457 P.2d 818 and Turnbow v. State, Okl.Cr., 451 P.2d 387."

We feel that the trial court properly admitted the evidence establishing the commission of another offense as showing a common scheme or plan. The offense for which the defendant was charged and the offense which was shown by the evidence in question were so closely related to each other that proof of the latter tended to establish the other. Thus, in conclusion, we find this proposition to be without merit.

The defendant's second proposition asserts that the evidence was wholly insufficient to support the verdict of the jury. He contends that there was no evidence that the defendant had control of any Amphetamine at the time of the sale that took place in Carter County nor was there any evidence that defendant profited from the sale, but he merely performed a favor for the agent. The defendant was not charged with unlawful sale of a controlled drug, but rather the defendant was charged with unlawful delivery of a controlled drug. The Information specified that the defendant and Robert Wayne West "[D]id unlawfully, wilfully and feloniously, while acting in concert each with the other, deliver and distribute two (2) small plastic bags of Amphetamine to one Gaylon Hayes, . . . ." Title 63 O.S.1971, § 2–101(10) and (12) [Definitions] states:

"10. 'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled dangerous substance, whether or not there is an agency relationship.

\* \* \* \* \* \*

"12. 'Distribute' means to deliver other than by administering or dispensing a controlled substance."

Title 21 O.S.1971, § 172, states:

"All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals."

The record illustrates that the jury was sufficiently instructed with regard to the rules of law set forth in the foregoing Statutes. The undercover agent testified that the defendant after offering to sell Amphetamine to the agent thereafter left to get the Amphetamine. The agent further testified that shortly thereafter the defendant introduced the agent to Mr. West and, after the defendant left the agent and Mr. West, Mr. West sold Amphetamine to the agent. The agent further testified that the very next day he met with the defendant and Mr. West at which time the following conversation transpired:

"Q. (BY MR. LAWLER) What conversation did you have with Mr. West in the presence of Mr. Woodruff?

"A. Mr. West then said, 'We sold all the speed that we had the other night, but we saved the last two grams for you.'

"Q. You said 'gram.' What is a gram?

"A. A gram is a weight measure of a substance. In this particular case it was amphetamine.

"Q. In reference to the crystal that you earlier testified to, would a gram be more or less than a crystal?

"A. The crystal is the substance. It means the amphetamine.

"Q. All right. Then in reference to a dime bag or a gram, what would be the difference in size of that?

"A. A gram would be a little bit larger than a dime bag.

"Q. Mr. Hayes, what other conversation did you then have with Mr. Woodruff?

"A. I then asked him . . . I made it a question . . . 'Is it as good as the stuff you had the other night?' At this time Mr. West replied, 'Yes, it is the same stuff.' Then Mr. Woodruff inquired, 'Did you do the whole dime?' I then told him, 'No, I just did a piece; but it was real good speed.' I then inquired, 'How much for a gram?'

"Q. Did Mr. Woodruff reply anything to you at that time?

"A. Yes, sir, he did.

"Q. What did he say?

"A. Thirty-five dollars.

"Q. What then· happened, Mr. Hayes?

"A. At that time Mr. West . . . Excuse me. Mr. Woodruff handed me a small white box containing two small packages of amphetamine." (Tr. 32–33)

We find, after carefully reviewing the evidence, it is sufficient to support the verdict of the jury. This Court has consistently held that where there is competent evidence in the record from which the jury could reasonably conclude the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. See, Jones v. State, Okl.Cr., 468 P.2d 805 (1970). We are of the opinion that this proposition is also without merit.

The defendant's third proposition asserts that the trial court erred in allowing the jury to hear the direct testimony that it had requested to have read back to them and in not allowing the jury to hear the cross-examination as well. The record reflects that the jury, after deliberating, returned to the court room and the following transpired:

"BY THE COURT: I have here a note that is not quite clear on what it is you want. You ask for some part of Mr. Hayes' testimony that you want to hear be replayed to you. Is that correct?

"BY THE FOREMAN OF THE JURY: Yes, sir.

"BY THE COURT: Now exactly what part of the testimony is it you are requesting to hear? Your note says 'We request the part of Mr. Hayes testimony relating to the time he made contact with Mr. Woodruff at "My Brothers Club" through the sale.' Is it where the first contact was made with Mr. Woodruff by Agent Hayes?

"BY THE FOREMAN OF THE JURY: Just that testimony is all that was asked for.

"(TESTIMONY REPLAYED: The jurors then heard testimony beginning with Question 1 on page 15 through Answer 7 on page 21.)

"(JURORS LEAVE JURY BOX AND RETURN TO JURY ROOM.)

"BY MR. RITTER: Now, Your Honor, we think the jury should also be permitted to hear the cross examination on that.

"BY THE COURT: Do you want to hear additional testimony?

"BY THE FOREMAN OF THE JURY: No, sir, that is all we need to hear." (Tr. 75–76)

Title 22 O.S.1971, § 894, states as follows:

"After the jury have retired for deliberation, if there be a disagreement between them as to any part of the *testimony* or if they desire to be informed on a point of law arising in the cause, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to the county attorney and the defendant or his counsel, or after they have been called." (Emphasis added)

We have previously held that neither the defendant nor the State has the right to select what portions of a witness' testimony is read to the jury, but the jury alone may request that all or any part of a witness' testimony be read. See, Miller v. State, 40 Okl.Cr. 72, · 267 P. 673 (1928) and cited with approval in Farrington v. State, Okl. Cr., 490 P.2d 766 (1971). In the instant case the court complied with the jury's request to replay a part of the testimony of a witness. We find this was proper in light of the statutory and case law in Oklahoma. Thus, for the reasons stated we find this proposition to be without merit.

■ The defendant's fourth proposition asserts that the trial court erred in denying the defendant's motion for mistrial. The defendant argues that he was not only tried as to the evidence of the crime he was charged with, but was also tried on evidence showing another offense. In light of our disposition of defendant's first proposition, we find the defendant's fourth proposition to be without merit.

In conclusion, we observe the record is free of any error which would justify modification or reversal. The judgment and sentence is accordingly affirmed.

BLISS, J., specially concurs.

BRETT, P. J., dissents.

BLISS, Justice (specially concurring):

The opinion as written by Judge Bussey in this case is precisely correct, both as to its statement of the facts as reflected by the trial transcript and its statement of the applicable law.

Showing the like offense the very next day by the same parties in Norman comes squarely and clearly within the exception to the general rule, "common scheme or plan embracing the two or more crimes so related to each other that proof of one tends to establish the other." See the authorities cited in the opinion. Defendant's second assignment of error, above, is that the evidence was insufficient because he was not present and had stepped out of the picture when the sale of the Amphetamine was actually consummated.

If defendant was not a party to the sale made in Ardmore, charged in the information, why then the conversation in Norman when State's witness Hayes asked the defendant Woodruff in the presence of his co-defendant, West, "Is it as good as the stuff you had the other night?" referring, of course, to the previous sale made in Ardmore.

The dissenting opinion expresses great concern that "to charge a defendant with the commission of a certain crime and force him, *at trial*, to defend against another independent crime alleged to have occurred subsequently", is manifestly unfair. Showing of the subsequent offense in Norman came as no surprise in the trial to the defendant and his attorney.

Four days before trial the District Attorney filed his written brief in support of his theory that the Norman offense was admissible as evidence in the trial of the crime charged in the information, the Ardmore offense. Two days later defense counsel filed his reply brief, contending the subsequent offense was not admissible. Before the trial began the trial court correctly ruled the evidence to be admissible. The authority cited in the dissenting opinion does not conflict with the opinion in this case and I concur therein.

BRETT, Presiding Justice (dissenting):

I dissent to the opinion of the Court for the reason that evidence that this defendant participated in the sale of an illegal drug on the day following the sale with which he was charged was improperly admitted and denied him a fair trial which was his right. It is manifestly unfair to charge a defendant with the commission of a certain crime and force him, at trial, to defend against another independent crime alleged to have occurred subsequently. It is my opinion that today's decision constitutes an example of the type of abuse of the exceptions to the rule that the accused is to be convicted, if at all, by evidence showing him guilty of the offense charged alone which this Court criticized in Bunn v. State, 85 Okl.Cr. 14, 184 P.2d 621 (1974).

I would reverse and remand this case with instructions to grant the defendant a new trial.