Forrest Kinser WADE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-76-518.

Court of Criminal Appeals of Oklahoma.

Nov. 4, 1976.

Rehearing Denied Nov. 23, 1976.

Jon M. Masters, Tahlequah, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Kenneth Lisle, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Forrest Kinser Wade, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Cherokee County, Case No. CRF–76–5, for the offense of Rape in the First Degree, in violation of 21 O.S.1971, § 1114. His punishment was fixed at twenty (20) years' imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Joy Bolton testified that on December 1, 1975, the defendant came to her house and asked to use the telephone because he was having car trouble. She admitted defendant into the house and dialed a service station number for him. Defendant put his hand over her mouth and told her to hang up the telephone. She refused and defendant struck her on the head, took her into a bedroom, hit her again and tore off her clothes. Defendant undid his jeans and put out his penis. He attempted penetration on several occasions. She testified, "I could feel his penis in my female parts." (Tr. 135) Defendant tied her hands and feet together with neckties and performed acts of oral and anal sodomy. She convinced defendant that she would not tell if he would let her go. She drove defendant to a service station, he got out of the car and she "floorboarded it." (Tr. 141) She went to her husband's office and he contacted a Deputy Sheriff. Defendant was arrested in front of her house trying to get his car started.

Dr. Donald Olson, Jr. testified that he examined Joy Bolton on December 1, 1975 and found numerous, fresh abrasions about her person.

Deputy Sheriff Jack Goss testified that he observed the defendant about 9:45 a. m. on December 1, 1975. Defendant approached him and asked if he had any jumper cables. Shortly thereafter he had a conversation with Mr. and Mrs. Bolton. He proceeded to the Bolton residence and arrested defendant. He identified neckties which he found in the southwest bedroom of the Bolton residence, and a purple letter-jacket which was found in defendant's car.

Charlie Dreadfulwater testified that on the morning in question the defendant approached him and asked for a ride. They picked up some jumper cables and proceeded to the Bolton residence. As they tried to start the car, Deputy Goss arrived and arrested the defendant.

Deputy Sheriff Blake Stanley testified that he took several pictures at the Bolton residence of blood stains, neckties and Mrs. Bolton.

Janey Hendrix testified that she took pictures of the victim at Dr. Olson's office.

Gene Bolton testified that his wife came to his office at approximately 10:00 a. m. and reported that she had been beaten and raped. He had a fellow employee call the Sheriff's Office and arrange a meeting at the Phillips 66 Station at Tsa-La-Gi. He had a conversation with Deputy Goss and they proceeded to the Bolton residence. Defendant and Charlie Dreadfulwater were working on defendant's car. He further testified that he took his wife to the District Attorney's Office and to Dr. Olson.

For the defense, Bertrum Bobb and Elizabeth Coffey testified that defendant had a good reputation in the community.

Defendant testified that he was nineteen years old and a member of the United States Air Force; that on the evening of November 30th, he swerved to miss a dog and "I just got stuck." (Tr. 226) He spent the night in the car and the following morning went to the Bolton residence to use the phone. The numbers he called were busy and he became angry. Mrs. Bolton grabbed for the phone and he hit her, knocking her to the floor. He then helped her up and apologized. He carried her to the bedroom and laid her on the bed. He continued to apologize and she agreed to take him to the service station. She drove off and left him at the service

station. He denied any sexual attack on Mrs. Bolton.

Defendant first urges that the trial court was without jurisdiction because he was unlawfully arrested. We have previously held that the fact that an arrest may have been unlawful does not affect the jurisdiction of the Court, nor does it preclude trial of the defendant for the offense. See, *Hart v. State*, Okl.Cr., 493 P. 2d 846. We, therefore, find this assignment of error to be without merit.

Defendant next contends that the inventory search of his automobile made subsequent to an unlawful arrest should have been suppressed. The evidence obtained as a result of the search was a jacket. We do not deem it necessary to discuss the legality of the arrest. Assuming arguendo that the jacket was seized illegally, we fail to see how same prejudiced the defendant in view of the defendant's admission that he was in the house and that he struck her. The only relevancy of the jacket was to place the defendant inside the house. It had no bearing on whether or not defendant raped the prosecutrix. In *Constabile v. State*, Okl.Cr., 513 P.2d 588 (1973), we stated:

". . . Therefore, the introduction of the sample though properly inadmissible due to the failure to establish a complete chain of possession was cumulative evidence. This Court has held on many occasions that the admission of evidence which is merely cumulative will not be held reversible error even though the evidence is inadmissible. . . ."

Defendant asserts, as his third assignment of error, that he was denied a fair trial because of the actions of the Special Prosecutor. We need only observe that the record reflects that the conduct of the Special Prosecutor was well within the rules of conduct, and non-prejudicial toward the defendant. In *Hobson v. State*, Okl.Cr., 280 P.2d 735 (1955), in the sixth paragraph of the Syllabus, we stated:

"Attorney employed specially by injured party to assist county attorney in the prosecution is at all times subservient to the county attorney and must work under the direction and supervision of the duly elected county attorney and is subject to all the rules which govern the conduct of the attorney. . . ."

We, therefore, find this assignment of error to be without merit.

Defendant next contends that the trial court erred in denying his application for a change of venue. We have carefully examined the voir dire examination and find that each of the jurors were thoroughly examined as to their qualifications by both the defendant and the State, and each juror selected affirmatively stated that he or she could be fair and impartial jurors. Under such circumstances the trial court did not err in denying defendant's application for change of venue. See *Russell v. State*, Okl.Cr., 528 P.2d 336 (1974).

Defendant asserts, as his fifth assignment of error, that "Appellant was Charged and Tried and Instructions were given upon the Charge of Rape, First Degree, upon an Information which alleged Second Degree Rape, as properly raised by Demurrer of Defense Counsel." The Information states, in part, as follows:

". . . FORREST K. WADE . . ., did then and there unlawfully, wilfully and feloniously with the use of force and violence and by means of threats of immediate and great bodily harm to one JOY BOLTON, a female person not the wife of the said defendant, overcome all resistance on the part of the said JOY BOLTON, and did then and there rape, ravish, carnally know and have sexual intercourse with said female against her will and consent, in violation of 21 O.S.A. 1114 . . . ."

Defendant argues that the omission in the Information of the words "accompanied by apparent power of execution" charges only the offense of Rape in the Second Degree.

In *Strunk v. State*, Okl.Cr., 450 P.2d 216 (1969), wherein the defendant contended that the trial court erred in allowing the prosecution to amend the Information by inserting the words "accompanied by apparent power of execution," this Court, in finding that these words went only to form rather than substance, stated:

"In the instant case the Information, prior to its amendment, was sufficient to charge the offense of Rape in the First Degree and not Rape in the Second Degree, as contended by the defendant."

■ Defendant asserts, as his sixth assignment of error, that the trial court erred in admitting evidence of other crimes. Defendant argues that the testimony of Mrs. Bolton as to other sexual acts was for the purpose of: "(1) providing a substitute for an essential element of the crime charged; and (2) to inflame and prejudice the jury." In *Moulton v. State*, Okl.Cr., 476 P.2d 366 (1970), in the first paragraph of the Syllabus, we stated:

"The general rule in this state is that when a defendant is put upon trial for one offense he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone and the admission of evidence of other crimes, either prior or subsequent to the offense for which he is on trial is inadmissible. However, evidence of separate and similar offenses is admissible when it is material and proper to show (1) motive, (2) intent, (3) absence of mistake or accident, (4) identity of person charged with the commission of the crime for which an accused is put on trial, and (5) common scheme or plan embracing the two or more crimes so related to each other that proof of one tends to establish the other."

We further observe that the testimony of the prosecutrix as to other sexual acts were admissible as part of the res gestae. In *Martin v. State*, Okl.Cr., 449 P.2d 275 (1969), in the fifth paragraph of the Syllabus, we stated:

"It is not possible to define the term 'res gestae' by any exact definition which will fit all cases. The term in a general way may be defined as the circumstances, facts, and declarations which grow out of the main fact and shed light upon it and tend to explain it, are voluntary and spontaneous, and made at a time so near, either prior to subsequent to the main act, as to exclude the idea of deliberation or fabrication."

■ Defendant contends, in his seventh assignment of error, that he was convicted upon improbable, contradictory and inconsistent, uncorroborated testimony of the prosecutrix. We disagree. We first observe that the evidence of the prosecutrix was corroborated by the testimony of Dr. Olson as to her injuries and by Deputies Goss and Stanley as to the neckties found in the bedroom of the Bolton's. We further observe that the prosecutrix's testimony was clear, consistent, probable and worthy of credence. See, *Hurd v. State*, Okl. Cr., 502 P.2d 1276 (1972).

■ Defendant's eighth assignment of error is that the trial court failed to instruct upon the lesser included offenses of Assault and Battery and Assault with Intent to Commit Rape. We disagree. The evidence adduced that defendant was either guilty of Rape in the First Degree, or not guilty of any other degree of rape, or any lesser included offense. Under such circumstances the trial court did not err in refusing to give an instruction covering any lesser offenses. See, *Epley v. State*, 94 Okl.Cr. 308, 235 P.2d 711 (1951).

■ Defendant contends, in his ninth assignment of error, that the trial court erred in permitting testimony of "numerous instances of purported intercourse without requiring the State to elect as to which act it relied upon for conviction." We are of the opinion that the acts of sexual intercourse between the defendant and the prosecutrix, which occurred within a short period of time, constituted a single offense. Under such circumstances it is

unnecessary for the State to elect on which specific act of intercourse it would rely upon for conviction. See, *Turnbow v. State*, Okl.Cr., 451 P.2d 387 (1969).

As his tenth assignment of error, defendant contends that the instruction of the trial court relating to penetration was wholly inadequate and misleading, resulting in the defendant being denied due process of law. The pertinent portion of Instruction No. 3, defines "penetration" as follows:

"Any sexual penetration, however slight, is sufficient to complete the crime."

We are of the opinion that the court's instruction was eminently correct and that the same uses the statutory language of 21 O.S.1971, § 1113. In the early case of *Adams v. State*, 43 Okl.Cr. 179, 277 P. 688 (1929), this Court stated:

"  .  .  . Where the court, in instructing the jury as to the law of the case, sets out the statute under which the defendant is being prosecuted, practically, in the language of the statute, the instruction is not erroneous."

Defendant asserts, in his eleventh assignment of error, that the trial court erred in not granting a mistrial as a result of the misconduct of a spectator at which time a mistrial was requested by defense counsel. The record reflects that during the course of the trial the following transpired:

"THE COURT: (Out of the hearing of the jury.) This hearing at the bench pertains to a motion for a mistrial on the part of the defendant on the grounds that Mr. Paul Tarkington, who is an elderly man approximately seventy years old, possibly eighty, I imagine, who is sitting on the first row of the spectators section, made the statement to another spectator, I suppose, to another elderly man, and I heard him only whisper, and I don't know what it was, or what he said, all I heard was the noise or the voice and I couldn't understand the words here at the bench. What is your recollection of it?

"MR. HAYES: He said something about testifying.

"THE COURT: What did you hear?

"MR. BAKER: I believe that was it.

"THE COURT: If that's all the statement was, I will admonish the spectators that they are not to make any further statements or cause any commotion or I will clear the courtroom.

"MR. BAKER: Admonish the jury to disregard it.

"THE COURT: Ladies and gentlemen of the jury, a statement, or some responses came from the back part of the courtroom; I am not just exactly sure who made that statement, but from what I have been advised as to what the statement was, I don't think, or feel like it would be prejudicial in any manner, but you are not to associate any significance whatsoever to that statement, if you heard any part of it, and you must dismiss it from your minds at this time. Do not allow yourselves to be influenced by any statement, or anything else but what comes from this witness stand. .  .  ."

Although this assignment of error is improperly before this Court in that defendant failed to support the same with citation of authority, we are of the opinion that the trial court's admonishment to the jury cured any possible error which might have arisen from the incident. See, *Ethridge v. State*, Okl.Cr., 418 P.2d 95 (1966).

Defendant next contends that the first eleven assignments of error collectively and cumulatively support the position that the case should be reversed. We must again disagree inasmuch as we have previously found these assignments of error to be without merit, it necessarily follows that this assignment of error is similarly without merit.

Defendant asserts, in his final assignment of error, that the sentence is

excessive. We have consistently held that the question of excessiveness of punishment must be determined by a study of all the facts and circumstances in each particular case and the Court of Criminal Appeals does not have the power to modify a sentence unless we can conscientiously say that under all the facts and circumstances the sentence is so excessive as to shock the conscience of this Court. See, *LaRue v. State*, Okl.Cr., 404 P.2d 73 (1965). We need only observe that the defendant's sentence of twenty (20) years was within the range prescribed by law and in view of the evidence of a brutal attack, the sentence does not shock this Court's conscience.

For all of the above and foregoing reasons, the judgment and sentence appealed from is accordingly *AFFIRMED*.

BRETT, P. J., specially concurs.

BLISS, J., concurs.

BRETT, Presiding Judge (special concurrence).

While I agree that the evidence in this case is sufficient to sustain the verdict of the jury, I do not agree that the special prosecutor should have been permitted to conduct this trial. Likewise I do not agree with the majority decision wherein it states, "We need only observe that the record reflects that the conduct of the Special Prosecutor was well within the rules of conduct, and non-prejudicial toward the defendant." As I view the record before this Court, the Special Prosecutor took charge of the prosecution and conducted it himself. With the exception of four witnesses whose testimony was short, the Special Prosecutor conducted the entire trial, including both closing arguments.

As I view the present statutes, there is no authority for the participation of a special prosecutor. When the Office of District Attorney was created by House Bill 801, (1965) 30th Oklahoma Legislature, no provisions were made for anyone but the District Attorney and his Assistants to prosecute crimes in his district. Section 9,

of the Act, provided for the temporary appointment of a district attorney, by the District Judge when there is no district attorney or assistant district attorney for the County. However, in 1967, the Legislature provided that the District Attorney may request the assistance of District Attorneys and their assistants in other counties. 19 O.S. (1967) Supp. § 215.4. In 1967, the Legislature also amended Section 9, of H. B. 801, supra and provided in § 215.9, "In the event that the District Attorney and all of his assistants are for any reason disqualified to act in a particular matter, the Attorney General of Oklahoma shall appoint some attorney of the district to act in such matter . . . " This provision removed the District Judge from the position of appointment. Consequently, I can find no authority for the Special Prosecutor's activity in this case; and I interpret this provision to mean that the District Judge is deprived of the power to permit the participation of a Special Prosecutor.

Speaking through the Honorable Dick Jones, this Court stated in *Neill v. State*, 89 Okl.Cr. 272, 207 P.2d 344 (1949):

"We know of no rule of law whereby a public officer may delegate power or authority involving official discretion or responsibility, except as prescribed by the statute. The law has very carefully guarded the administration of public justice from any interested or unauthorized intermeddling. The [district attorney] is a very responsible officer, selected by the people and vested with a wide personal discretion, intrusted to him as a minister of justice. There are many reasons why a power of this kind should be confined to the prosecuting officer. He is expected to be impartial in abstaining from prosecuting, as well as in prosecuting, and to guard the real interests of public justice in favor of all concerned."

. . . . . .

"The public have a right to insist upon the performance of public duties that are strictly official in the prosecution of

crime by [district attorneys] and assistants duly appointed and qualified as provided by law, and we think it would be directly contrary to public policy to allow or permit any general delegation of the [district attorney's] power or responsibility in this respect."

Under the 1949 statutes, Special Prosecutors were permitted to assist the prosecutor in the trial. But even then the Special Prosecutor was not permitted to take charge of the trial, as was done in the instant case. The majority decision cites *Hobson v. State,* supra, which was also authored by the Honorable Dick Jones, but that decision specifically recites, "We can find nothing in the record to show that the county attorney lost control of the case . . . ." On the other hand, when one reads the record in the instant case it appears that the Assistant District Attorney was participating at the pleasure and will of the Special Prosecutor. I believe such procedures—under the existing statutes—should not be permitted.

Therefore, while I agree that the evidence of this case is sufficient to sustain this conviction, because of the abuse of prosecutorial authority I would modify the sentence in this decision to ten (10) years, and modified I would affirm the conviction.