Elsie GRAYSON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–813.

Court of Criminal Appeals of Oklahoma.

May 31, 1977.

A. Carl Robinson, Muskogee, Court-appointed, for appellant.

Larry Derryberry, Atty. Gen., Douglas L. Combs, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Elsie Grayson, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Muskogee County, Case No. CRF–76–77, for the offense of Murder in the Second Degree, in violation of 21 O.S.Supp.1973, § 701.2 ¶ 1. Her punishment was fixed at a term of from ten (10) years to life imprisonment, and from said judgment and sentence a

timely appeal has been perfected to this Court.

At the trial, Sherman Scott testified that he was at defendant's residence on the morning of March 4, 1976. The defendant and Early Anderson got into an argument about when he was going to cook breakfast. They exchanged slaps and defendant stated, "I am going to get the pistol." [Tr. 21] Defendant went into a bedroom and Anderson went out the back door. The defendant came back into the living room with a pistol in her hand and asked about Anderson. Defendant's mother stated that he had gone outside. Defendant left the house and returned in a short time. She stated that she had shot the pistol and that "he is out there putting on an act like he is hurt." [Tr. 29] Scott went outside and found Anderson lying on his right side, bleeding from the mouth. He went down the street to call an ambulance. He identified State's Exhibit No. 1 as being similar to the gun he saw in defendant's hand.

Frank Bechtol testified that he lived next door to the defendant; that on the morning of March 4, 1976, he heard a loud noise. He went outside and observed Early Anderson lying on the ground. Sherman Scott walked out to Anderson and bent over him. Scott went back toward the house and shortly thereafter the defendant came out and walked over to where Anderson lay. She shook his shoulder and said, "Wake up, Early, wake up." [Tr. 54]

Jessie Johnson testified that on March 4, 1976, he was in his back yard picking onions when he heard a shot and went to the front of the house where he observed the defendant leaning over the deceased telling him to wake up.

Detective Bennie Johnston testified that he investigated a shooting on March 4, 1976. He advised the defendant of her constitutional rights, at which time she stated that no one else was there and she did not know what happened to Anderson. He placed the defendant under arrest and transported her to the police station. A gun was discovered in the trash barrel next to defendant's house.

Officer Hershal Cox testified that he assisted in the investigation of defendant's residence. He found State's Exhibit No. 1, the gun, in a trash barrel near the south side of the house.

Dr. Harvey Randall testified that he performed an autopsy on the body of Early Anderson and in his opinion Anderson died of a gunshot wound and massive hemorrhaging.

Detective Johnson was recalled and testified that a metal detector test was run on defendant's hands and traces of metal were found on her palm.

Robert Cartwright testified that he was employed at the Broadway Loan Shop; that on May 17, 1974, he sold a pistol to the defendant. He further testified that prior to the purchase the defendant filled out a Firearms Transaction Record.

Defendant testified in her own defense that Sherman Scott came to her home in the early morning hours of March 4, 1976. She heard Scott ask Anderson if he had any whiskey. She then went back to sleep. When she awakened she asked her mother about Anderson. Her mother replied that he and Scott went out in the back. She went outside and observed Anderson lying on the ground. She asked Scott what happened. Scott replied, "I don't know. He is laying down bleeding." She walked over to where Anderson was lying and attempted to comfort him. She told Scott to call an ambulance, but instead, he ran away. She testified that the last time she observed the gun, it was in her purse beside the bed. She further testified that Scott and Anderson usually argued when they were intoxicated.

On cross-examination she admitted a prior conviction for Manslaughter in the First Degree. She testified that she did not remember being asked if she had been previously convicted of a felony prior to purchasing the gun.

In rebuttal, Robert Cartwright was recalled and testified that he specifically remembered inquiring of the defendant if she had been convicted of a felony. The defendant informed him that she had not.

Sherman Scott was recalled and testified that he had been friends with Anderson for forty-five years and that they had never argued.

■ Defendant asserts, in her first assignment of error, that the trial court erred in allowing the prosecuting attorney to cross-examine the defendant concerning uncharged misconduct in the alleged falsification of the Federal Firearm Transaction Report. We are of the opinion that the cross-examination was proper inasmuch as it laid a foundation for the subsequent impeachment of defendant's testimony. The defendant admitted signing the report, but specifically denied that the questions contained in the report were propounded to her. Robert Cartwright was subsequently recalled and testified that he specifically remembered asking the defendant if she had been previously convicted of a felony and she responded that she had not. In Bewley v. State, Okl.Cr., 404 P.2d 39 (1965), we set forth the rule as to the scope of cross-examination aimed at impeachment wherein we stated:

". . . Regarding the cross-examination of a witness, Wharton's Criminal Evidence, Vol. 3, at page 266, states:

'Cross-examination to impeach, diminish, or impair the credit of the witness is not confined to matters brought out on the direct examination. The witness may be cross-examined as to collateral matters not embraced in the direct examination to test credibility and veracity.'"

We, accordingly, find this assignment of error to be without merit.

■ Defendant next argues that the prosecuting attorney further committed error in pursuing a line of questioning concerning prior misdemeanor convictions of the defendant. Defendant denied such convictions and no evidence was presented by the State to substantiate the same. In light of the defendant's admission of a prior conviction of Manslaughter in the First Degree, we find that the conduct complained of, if error, is harmless error within the meaning of 20 O.S.1971, § 3001, which provides as follows:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless it be the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

We, accordingly, find this assignment of error to be without merit.

■ Defendant generally contends, in the second, third, fifth and sixth assignments of error that the verdict is contrary to the law and the evidence. Although these assignments of error are improperly before us in that defendant did not support the same by citations of authority, we have carefully examined each and find them to be without merit. From the foregoing statement of facts it is readily apparent that the evidence, although conflicting, was sufficient to support the verdict of the jury. We have consistently held that it is the exclusive province of the jury to weigh the evidence and determine the facts and where the verdict is based on probable testimony, this Court will not interfere with the verdict even though there is a sharp conflict in the evidence. See, Hurd v. State, Okl.Cr., 502 P.2d 1276 (1972).

■ Defendant's final assignment of error is that the prosecuting attorney made two improper remarks during closing argument. We observe that defendant failed to timely object to the first alleged improper remark and as to the second alleged improper remark, the trial court sustained defendant's objection thereto. Defendant did not request the trial court to admonish the jury to disregard the remark. In dealing with a similar assignment of error in the recent case of Davidson v. State, Okl.Cr., 550 P.2d 974 (1976), we stated:

". . . The record shows that the trial judge sustained defendants' timely ob-

jection to this statement. If further action is desired, it is incumbent upon the defendants to request the trial court to take such action. It is well-settled, as held in *Russell v. State*, Okl.Cr., 528 P.2d 336, 341 (1974):

'[W]hen an objectionable statement is made, it is necessary that it be called to the attention of the court by a timely objection, together with a request that the jury be instructed to disregard the improper statement.  .  .  .'

"A review of the record, however, fails to show that the remark herein complained of is so fundamentally prejudicial that the error could not be corrected by instruction to the jury. We are, therefore, of the opinion that the action of the trial court cured the prejudice, if any, to defendants' case."

For the above and foregoing reasons, the judgment and sentence appealed from is AFFIRMED.

BLISS, J., concurs.

BRETT, J., concurs in results.