Carl THARPS, Jr., Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–350.

Court of Criminal Appeals of Oklahoma.

Oct. 14, 1976.

Richard A. Hoffman, Appellate Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Kenneth Lisle, Legal Intern, for appellee.

OPINION

BUSSEY, Judge:

Appellant, Carl Tharps, Jr., hereinafter referred to as defendant, was charged in the District Court, Tulsa County, Case No. CRF–72–1317, with the offense of Unlawful Possession of a Controlled Drug, Oxycodone, also known as Percodan–Demi, said drug being classified as a controlled dangerous substance in Schedule II (A–2) of the Uniform Controlled Dangerous Substance Act, 63 O.S.Supp.1972, § 2–206 (A–2); in violation of said Act, 63 O.S.Supp. 1972, § 2–402 (B–1). The defendant was found guilty in a trial by jury and sentenced to serve a term of ten (10) years in the custody of the State of Oklahoma Department of Corrections at McAlester, Oklahoma. From said judgment and sentence, the defendant has perfected his timely appeal to this Court.

The State's first witness at trial was Jerry McMillen, a Tulsa Police Officer, who testified that he had been a member of the Narcotics Division for two years. Officer McMillen stated that he had received training in narcotics investigation and identification, and had examined various narcotics, including Percodan–Demi, as well as having observed persons under the influence of heroin.

Officer McMillen testified that on April 21, 1972, he and two other officers served a narcotics search warrant to the defendant at approximately 8:00 a.m. at 515 East 32nd Street in the Vernon Manor Apartments, Tulsa, Oklahoma. The officers knocked and identified themselves, whereupon the defendant, wearing only undershorts, opened the door. While one of the officers, Detective Beck, stayed with the defendant in the living room, Officer McMillen and the other officer, Detective Cartner, searched the apartment. On top of a chest of drawers in one of the bedrooms, the officers found a car title and a billfold, both bearing the name of the defendant. In the third drawer of the chest they found syringes and needles, a blackened spoon, and a plastic baggie containing nine pink tablets, underneath clothing identified as belonging to both men and women. Several small tinfoil bindles containing a white powdery substance were found in the bedroom closet.

Officer McMillen further testified that during the search, at about 8:15 a.m., a knock was heard at the front door and a woman's voice was heard to say, "let me in, let me in." Officer McMillen went into the living room and the woman was let into the apartment. She was identified as Marjorie Booker, and was described as being "blurry-eyed and nose was running and hair and clothing very disarrayed." McMillen stated that as soon as she spotted the defendant sitting on a couch in the living room she exclaimed, "Hurry, I need a fix." Ms. Booker's person was then searched and her pursed seized, and upon finding marihuana cigarettes she was placed under arrest. No keys to the apartment were discovered in the custodial search.

Officer McMillen testified he had observed scars indicating needle marks on the arms of both Marjorie Booker and the defendant, but was unable to determine how old the scars were. The witness then discussed the use of the paraphernalia found in the apartment, which was rented in Marjorie Booker's name, but he did not link the drug in question with the para-

phernalia. The officer further testified that he had observed the defendant on approximately 15 or 20 occasions at all hours of the day and night, letting himself into said apartment during the two months the apartment was under surveillance. Officer McMillen stated that the defendant's shirt and trousers were found in the same bedroom in which his billfold was found, but the clothes in the chest of drawers were not identified. Some women's cosmetics were also found in the bedroom. It was then stipulated by agreement of counsel that the pink pills were found to be Oxycodone, also known as Percodan–Demi, and were received by the court in evidence, marked for the purpose of identification as State's Exhibit No. 1. The State then rested.

The first witness for the defense was Cheryl LaDean Tharps, who testified that she lived at 1528 North Elwood in Tulsa, with her husband of 16 years, the defendant. She testified they had lived at that location for four years, and that he maintained his residence there and kept all his clothes there. She stated that she and her husband had known Marjorie Booker for about ten years, and that Marjorie Booker lived at the Vernon Manor Apartments with her four children. The witness testified that she and her husband had had a "misunderstanding" and that he had left their house and had gone to Marjorie Booker's apartment. Mrs. Tharps further testified that her husband worked off and on at the Big Ten Recreation Parlor, and that he was sometimes out all night, claiming to be at the recreation parlor. The witness stated that she had never filed for a divorce, nor a legal separation, nor had she ever threatened the defendant with divorce. She also stated that she did not draw welfare checks or ever been on aid to dependent children.

The defendant then took the stand to testify in his own behalf. The defendant stated that he had lived with his wife and children, and that he worked at the Big Ten Recreation Parlor. He admitted knowing Marjorie Booker, that he went to her apartment occasionally, and that he had spent the night in her apartment on the 20th and 21st of April. The defendant testified that the only articles of clothing which he had on April 21st, were those that he had worn to the Booker residence. He stated that he did not know of the existence of the pills or the paraphernalia.

On cross-examination the defendant testified that he had never used, nor been addicted to, heroin, nor had he ever used any controlled drug. He further testified that the needle scars on his arms were the result of needles used to administer drugs to him when he was in the hospital, after being wounded in Korea. The defendant disputed Officer McMillen's testimony, regarding Marjorie Booker's knocking at the door, and claimed that Officer McMillen was not present when she entered the apartment. The defendant also denied that Marjorie Booker had demanded a "fix." The defense then rested.

The State next called Carolyn Johnson as a rebuttal witness. Mrs. Johnson stated that her husband was a heroin addict and that she occasionally used heroin. She testified that she had never seen the defendant with a syringe and that she had never seen him take any controlled drugs orally. When asked if she had ever purchased heroin from the defendant or seen the defendant use heroin, she refused to answer.

The witness testified that she had been to Marjorie Booker's apartment and had seen many people there, including the defendant. She stated that her husband would go to said apartment sometimes when he needed a "fix," and that the defendant was occasionally there. The witness testified that she had gone to see the defendant when she was "all strung out." Mrs. Johnson stated that she had never observed any pink tablets. The State rested.

The defendant asserts as his first assignment of error that the trial court erred in failing to sustain his demurrer and motion for dismissal raised at the close of the

State's case in chief. In support of this proposition the defendant relies mainly on *Brown v. State,* Okl.Cr., 481 P.2d 475 (1971). In *Brown v. State,* supra, at page 477, the Court held that where a person is present on the premises where marihuana is found but does not have exclusive access or use of the premises, it may not be inferred that he had knowledge or control of the drug without additional independent factors which establish his knowledge and control.

██ The defendant also cites *Roth v. State,* Okl.Cr., 532 P.2d 1397 (1975), in which this Court discussed the State's burden of proof. In the case at bar the State relies solely upon circumstantial evidence to prove the crime, and the defendant correctly points out that a conviction upon circumstantial evidence cannot be sustained unless the proof presented excludes every reasonable hypothesis except that of guilt. 532 P.2d 1398.

██ We have stated on numerous occasions that it is not the function of this Court to weigh the evidence. In *Jones v. State,* Okl.Cr., 468 P.2d 805, 807 (1970), this Court stated as follows:

> "Where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, . . . since it is the exclusive province of the jury to weigh the evidence and determine the facts. . . ." (Citation omitted)

See, *Neal v. State,* Okl.Cr., 529 P.2d 526 (1974).

██ Further, this Court has held that where there is any competent evidence which constitutes a chain of circumstances which reasonably support the allegations in the indictment the trial court should not sustain a demurrer to the evidence. *Martin v. State,* 92 Okl.Cr. 182, 222 P.2d 534, 544 (1950); also see, *Terhune v. State,* Okl.Cr., 530 P.2d 557 (1975).

The defendant contends that he did not have exclusive use or access to the apartment where the illegal controlled drug was found. He further urges that there was no actual evidence presented by the State to show that he had dominion and control of the drug.

 The Court finds no merit in this proposition. It has been frequently held in Oklahoma that illegal possession need not be actual physical possession of the drug, but can be established by circumstantial evidence. *Staples v. State,* Okl.Cr., 528 P.2d 1131, 1133 (1974). It has been further held that the fact that possession is not exclusive, is not a bar to a conviction. *Patterson v. State,* Okl.Cr., 403 P.2d 515, 517 (1965).

██ In the case at bar the State has met the burden of proving that the defendant had knowledge and control of the illegal drug. The evidence shows that the defendant was the sole occupant of the apartment when the officer served him the search warrant. He appeared to have been in bed and was clad only in undershorts. His wife testified that he had left home, and he admitted having stayed in the apartment for two nights. A witness for the State testified that the defendant frequented the apartment often, and that she and her husband had seen the defendant there when they needed a "fix." The witness also stated that drug addicts often visited the apartment.

Further, the defendant's billfold and car title were found on top of the chest of drawers in which the pink pills were found. Men's clothing was found in the same drawer as the drug. The defendant was seen entering the apartment at all hours of the day and night, while the woman who lived there had to knock to gain entrance. The woman was a convicted drug user and both she and the defendant had needle "tracks" on their arms.

From the facts as set forth above, it is clear that the evidence introduced estab-

lished a prima facie case for the consideration of the jury. The circumstances shown are inconsistent with any other hypothesis but that of guilty.

The defendant's second assignment of error is that the prosecutor made statements during the course of trial and in his closing argument that were so prejudicial as to have denied defendant his right to a fair and impartial jury trial.

■ To determine whether the defendant was prejudiced by the statements of the prosecutor during the course of trial is often a difficult task. Yet, this Court has long held that alleged misconduct of the prosecutor is no basis for reversal, unless the misconduct might have influenced the verdict against the defendant. *Samples v. State,* Okl.Cr., 337 P.2d 756, 761 (1959). Despite allegations by the defendant, the conflicts in the evidence were resolved by the jury without apparent prejudice, and the sentence was handed down clearly in line with the crime tried.

In *Harvell v. State,* Okl.Cr., 395 P.2d 331, 339, 340(1964), this Court held that:

"The right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration and argumentation is wide. Counsel for both the State and the defendant have a right to discuss fully from their standpoints the evidence and the inferences and deductions arising therefrom. It is only when argument by counsel for the State is grossly improper and unwarranted upon some point which may have affected defendant's rights that a reversal can be based on improper argument. . . ." (Citations omitted)

Despite the claim by the defendant that the prosecutor created prejudice by soliciting testimony concerning heroin, the State's case in chief contains no mention or allusion to the fact that the defendant possessed heroin. The defendant was charged, tried and convicted of the illegal possession of Percodan–Demi, the identity of which was stipulated to by the parties.

Moreover, the use of Carolyn Johnson as a rebuttal witness was not to prejudice the defendant, but to show discrepancies between the defendant's direct testimony and the State's rebuttal testimony.

■ The defendant further attacked the prosecutor's closing statements as prejudicial. The rule is well established that:

"[D]uring closing argument the prosecutor has a right to discuss fully, from his standpoint, the inferences and deductions which may be reasonable drawn from the evidence presented at trial. . . . We have further held that the mention of incompetent or immaterial matters in the prosecution's closing argument affords no ground for reversal of conviction unless it appears that the statement or statements were manifestly prejudicial. . . ." (Citations omitted) *Ford v. State,* Okl.Cr., 532 P.2d 89, 96 (1975).

■ The statements made by the prosecutor in this case were not manifestly prejudicial, but were used to impeach the defendant's credibility. In his closing remarks, the prosecutor continually based his conclusions upon the evidence, and any improper remarks were objected to and the jury was then admonished to disregard such statements. (Tr. 190) The defendant must not now be heard to allege prejudice since the improper references were corrected by such admonishment of the jury by the court. *Montgomery v. State,* Okl.Cr., 447 P.2d 469, 473 (1968).

The defendant cited *Ray v. State,* Okl. Cr., 510 P.2d 1395 (1973); *Dupree v. State,* Okl.Cr., 514 P.2d 425 (1973); *Barham v. State,* Okl.Cr., 514 P.2d 417 (1973); and, *O'Brien v. State,* Okl.Cr., 540 P.2d 579 (1975) in support of this proposition. All of the cases cited by defendant provide us with examples of unreasonable comments made by prosecutors, and are in no way comparable to the statements made by the prosecutor in the case at bar. We are of the opinion that no injury was suffered by the accused.

The defendant further contends that the rebuttal evidence presented by the State of Oklahoma was clearly illegal in that it only dealt with the evidence of heroin used and distribution that may have been engaged in by defendant, without producing any hard or circumstantial evidence to that effect.

 In support of his proposition, the defendant relies on *Miller v. State,* 13 Okl.Cr. 176, 163 P. 131 (1917); *Nemecek v. State,* 72 Okl.Cr. 195, 114 P.2d 492 (1941); and, *Rhine v. State,* Okl.Cr., 336 P.2d 913 (1959). The defendant correctly states that any evidence which shows or tends to show that the accused has committed other crimes, wholly independent of the specific crime charged is irrelevant and inadmissible. The defendant is in error when he further states that none of the exceptions to the general rule exist in the case at bar. In *Woodruff v. State,* Okl. Cr., 539 P.2d 28, 30 (1975), a case involving the sale of narcotics, this Court held that:

"[T]he trial court properly admitted the evidence establishing the commission of another offense as showing a common scheme or plan. The offense for which the defendant was charged and the offense which was shown by the evidence in question were so closely related to each other that proof of one tended to establish the other. . . ."

In the case at bar no former conviction was brought up and no previous crime was proved. The evidence only tended to show the defendant's prior bad acts which were in conflict with the testimony of the defendant. In *Parker v. State,* 96 Okl.Cr. 323, 253 P.2d 1085, 1086 (1953), the Court, quoting with approval *Clark v. State,* 95 Okl.Cr. 119, 239 P.2d 797 (1952), stated:

" 'When a defendant elects to testify in his own behalf he occupies a double position; as a defendant, his character cannot be attacked by the state; as a witness, he puts his credibility in issue the same as any other witness.' "

By taking the stand the defendant opened up the possibility of having his testimony impeached.

 The general rule as to the admission of rebuttal testimony was set forth in *Schneider v. State,* Okl.Cr., 538 P.2d 1088, 1095 (1975), as follows:

"[R]ebuttal testimony may be offered to explain, repel, counteract, disprove, or destroy facts given in the evidence by an adverse party, as well as to clarify a disputed point, notwithstanding that the same testimony might have been introduced in chief, and that the introduction of such evidence is a matter of discretion for the trial court which will not be a ground for reversal absent an abuse thereof. . . ." (Citations omitted)

While on the stand the defendant denied any knowledge of drugs. In direct contradiction to these statements, was the testimony of the prosecution's rebuttal witness. She stated that the defendant had seen her use heroin, and that her husband had gone to see the defendant when he needed to buy heroin. (Tr. 146) She also stated that some of the people who frequented the apartment in which the defendant was arrested were addicts.

Finding nothing in the record to indicate that the trial court abused its discretion in admitting rebuttal testimony, this assignment of error is held to be without merit.

It is finally argued, in the defendant's fourth assignment of error, that the sentence imposed was excessive. The defendant was convicted of illegal possession of a controlled drug, Oxycodone, or Percodan–Demi, in violation of 63 O.S.Supp.1972, § 2–402 (B–1), which carries a penalty of from two (2) to ten (10) years' imprisonment. The defendant was sentenced to ten (10) years.

 In *Roberts v. State,* Okl.Cr., 473 P.2d 264 (1970), this Court quoted with approval *LaRue v. State,* Okl.Cr., 404 P.2d 73 (1965), that:

" 'The question of excessiveness of punishment must be determined by a study of all the facts and circumstances in each particular case and the Court of Criminal Appeals does not have the power to modify a sentence unless we can

conscientiously say that under all the facts and circumstances the sentence is so excessive as to shock the conscience of the Court.' "

The sentence imposed in the instant case is not excessive as it is within the limits of the statutory penalty.

Under the authority set forth above, we are of the opinion that the judgment and sentence appealed from should be, and is hereby, *AFFIRMED*.

BRETT, P. J., and BLISS, J., concur.