Kenneth Ray JOHNSON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–80–100.

Court of Criminal Appeals of Oklahoma.

March 12, 1982.

Opinion on Rehearing Feb. 8, 1983.

Johnie O'Neal, Asst. Public Defender, Tulsa, for appellant.

Jan Eric Cartwright, Atty. Gen., Susan Talbot, Asst. Atty. Gen., Chief, Crim. Appellate Div., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

The appellant, Johnson, was convicted of Murder in the First Degree. The jury imposed a penalty of death.

The facts are relatively uncomplicated, though tragic. On June 19, 1979, the appellant and three cohorts robbed a U-Tote-M store in Tulsa, Oklahoma. At gunpoint the appellant told the store clerk to remove all of the money from the cash register. The clerk was unable to immediately open the cash register so the appellant shot him in the stomach. In spite of the fact that the clerk was shot and bleeding to death, the appellant demanded that he open the store safe. When the safe was opened Johnson grabbed the money and ran from the store. Prior to his death, the clerk was able to reach the phone and call the police. The appellant was later apprehended and voluntarily admitted to his participation in the robbery and the shooting of the store clerk.

The appellant raises thirty propositions of error. Because of the result reached in this case we need not address every assignment of error raised on appeal.

### I.

The appellant challenges the legality of his warrantless arrest for lack of probable cause. Officer Parks arrested the appellant based upon information provided by Kenneth Hall. Hall, a friend of Johnson, informed the police that Johnson had told him about a robbery he had committed at a U-Tote-M store. Hall also stated that Johnson admitted shooting the store clerk

during the robbery. Additionally, Hall's typewritten statement substantiated evidence the police had obtained during their investigation of the robbery.

■ Johnson's arrest is not rendered invalid because of the failure by the police to obtain a warrant. Title 22 O.S.Supp.1980, § 196(3), provides that "[a] peace officer may, without a warrant, arrest a person . . . when a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it." A police officer may make a warrantless arrest of a person if the officer has probable cause to believe that the arrestee has committed a felony. *See Leigh v. State,* 587 P.2d 1379 (Okl.Cr.1978).

In *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), the United States Supreme Court addressed the validity of warrantless arrests. The Court stated "[t]he balance struck by common law in generally authorizing felony arrests on probable cause, but without a warrant, has survived substantially intact." The court further stated that the necessary inquiry is not "whether there was a warrant or whether there was time to get one, but whether there was probable cause for the arrest."

■ In our judgment the police had probable cause to believe Johnson had committed the U-Tote-M store robbery. The police were given information from a named informant, which substantially coincided with the evidence they had obtained during their investigations. Therefore, we find that Johnson's voluntary confession was pursuant to a valid arrest.

### II.

The appellant's next argument is one of first impression. He argues that either a preliminary hearing or a pretrial hearing should have been held on the bill of particulars. In support of this proposition the appellant cites *Carter v. State,* 292 P.2d 435 (Okl.Cr.1956). This Court in *Carter* held that a defendant charged in the information with "after former conviction of a felo-

ny" has a fundamental right to be informed of this additional charge in the preliminary complaint and in the preliminary hearing.

The rationale for requiring the State to introduce proof of an after former conviction at the preliminary hearing is to inform the defendant that he will be tried as a habitual offender. The bill of particulars filed in a death penalty case serves to inform the defendant of the aggravating circumstances the State intends to prove at the sentencing proceeding. Additionally, Title 21 O.S.Supp.1980, § 701.10 mandates that "only such evidence in aggravation as the State has made known to the defendant prior to his trial shall be admissible." This procedure utilized in death penalty cases eliminates any element of surprise.

■ We find that the procedures used to inform the appellant of the aggravating circumstances did not violate his rights under the Fourteenth Amendment due process or his right under the Sixth and Fourteenth Amendments to be informed of the nature of the charges against him. Therefore, we hold that there is no statutory or constitutional requirement to provide the appellant with a preliminary hearing on the bill of particulars. This Court is not willing to judicially impose such a requirement.

### III.

■ We have carefully reviewed the appellant's Propositions I, II, III, VI, VII, and XII. These propositions have not been adequately supported by argument or citation of authority. A brief must state the precise error and a sufficient record for this Court to understand the issue presented. It is the duty of counsel to give the page of the record at which the matter in controversy can be found and clearly present the argument and cite authority in support thereof. *Cox v. State,* 3 Okl.Cr. 129, 104 P. 1074 (1909); Rules of the Court of Criminal Appeals, Rule 1.7. The record has been fully examined and the appellant was not deprived of any fundamental right; therefore, we will not address the aforementioned propositions. *Crutchfield v. State,* 553 P.2d 504 (1976), *cert. denied* 429 U.S. 928, 97 S.Ct. 335, 50 L.Ed.2d 299.

### IV.

■ The appellant next contends that the method by which the jury was impaneled was violative of the Supreme Court's ruling in *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). In *Witherspoon* the Supreme Court held "that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction."

The appellant specifically objects to the exclusion for cause of juror Kay. The following transpired during the trial judge's voir dire of Juror Kay:

THE COURT: In a case where the law and the evidence warrant, in a proper case, could you without doing violence to your conscience agree to a verdict imposing the death penalty?

MRS. KAY: I think it would bother me too much.

THE COURT: You feel then that you could not follow the law in that regard; is that correct?

MRS. KAY: Yes.

THE COURT: Your reservations about the death penalty, are they such, regardless of the law, the facts and circumstances of the case you would not inflict the death penalty? Is that what you're telling me?

MRS. KAY: Well, I think it needs to be, but I don't think I would be good.

THE COURT: Well, to be good, are you saying that you just could not do it regardless of circumstances or anything, the law, the facts, the circumstances, if it comes down to that? You just could not do it, period? Is that what you're saying?

MRS. KAY: Right.

The Supreme Court further stated in *Witherspoon* that "the most that can be demanded of a venireman . . . is that he be

willing to consider all the penalties ... and not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings." *Supra,* fn. 21, 88 S.Ct. at 1777 fn. 21. In this case, the record supports the trial court's ruling to exclude Juror Kay. It appears from the record that Juror Kay was irrevocably committed against the imposition of the death penalty, even if the evidence and the law sanctioned such a finding.

## V.

It is argued that the testimony of Andy Workman should have been suppressed because he had been subjected to hypnosis. The use of medical hypnosis in criminal prosecutions has become a controversial issue in recent years. This Court has addressed the admissibility of statements made by the accused while under hypnosis in *Jones v. State,* 542 P.2d 1316, 1327 (Okl. Cr.1975). In *Jones* we held that statements made while in a hypnotic state are inadmissible "when offered for establishing the truth of the statements."

■ This case does not require this Court to reach the issue of whether the results of hypnotic testing are admissible in a criminal prosecution. We find that the testimony of Workman was not tainted by the hypnotic testing. Workman merely testified that on the night of the U-Tote-M robbery he was awakened by his daughter and saw "some people messing around the laundry" room. He also testified that he saw three black men walk from the laundry room, and cross the street to the U-Tote-M store. Workman made these same statements to the police on the night of the robbery prior to any hypnotic testing. Workman did not attempt to identify the appellant nor establish the appellant's guilt or innocence. We find that the hypnotic testing did not in any manner affect Workman's testimony; therefore, this proposition is without merit.

## VI.

The State also introduced evidence of statements made by the victim shortly before his death. Officer Johnson testified about the information the victim had given to him when he arrived at the scene of the robbery. The appellant contends that this testimony by Officer Johnson was inadmissible hearsay. The State concedes that the statements were hearsay; however, it argues that the statements were admissible as a dying declaration or an excited utterance.

■ Title 12 O.S.Supp.1980, § 2804, specifies five exceptions to the hearsay rule where the declarant is unavailable. Section 2804(B)(2) provides: "[i]n a prosecution for homicide or in a civil action or proceeding, a statement made by a declarant while believing that his death was imminent, concerning the cause or circumstances of what he believed to be his impending death" is admissible. There is no evidence in the trial record to establish either directly or by circumstantial evidence that the declarant was under the sense of impending death. Therefore, we find that the State did not lay a sufficient foundation to introduce this evidence under the dying declaration exception.

■ Title 12 O.S.Supp.1980, § 2803(2), establishes the excited utterance exception to the hearsay rule. Section 2803(2) provides that "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is admissible. The critical question under this exception is whether the statements by the declarant were spoken under the extreme stress of a startling event so that there was no time to fabricate. In this case, the declarations by the victim were sufficiently spontaneous to the startling event to allow admittance under the excited utterance exception. The victim immediately after the robbery called for the police. The record indicates that Officer Johnson was in the area at the time of the robbery and was at the scene within minutes. Thus, we hold that the evidence complained of was admissible as an excited utterance.

## VII.

The appellant also attacks the constitutionality of the Oklahoma death penalty statute. This issue has been addressed in two recent opinions by this Court. *See Hays v. State,* 617 P.2d 223 (Okl.Cr.1980), and *Eddings v. State,* 616 P.2d 1159 (Okl.Cr. 1980); 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) (reversed on other grounds). We find that the Oklahoma death penalty Statute does not violate the Eighth Amendment ban to cruel and unusual punishment. *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).

## THE SENTENCING PROCEEDING

In the second stage of the capital felony trial the State sought to prove three aggravating circumstances. The State contends that: (1) Johnson committed the murder for remuneration or the promise of remuneration; (2) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; and (3) there exists a probability that Johnson would commit criminal acts of violence that would constitute a continuing threat to society. *See* 21 O.S.Supp.1980, § 701.12.

## VIII.

The appellant urges this Court to find that the aggravating circumstance found in Title 21 O.S.Supp.1980, § 701.12(7), is unconstitutionally vague and overbroad. We disagree.

21 O.S.Supp.1980, § 701.12(7), provides that an aggravating circumstance shall be "[t]he existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Texas has a substantially similar provision in its capital murder statute.[1] The United States Supreme Court in *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976),

held that the Texas statutory provision is not unconstitutionally vague. In upholding the constitutionality of the Texas statutory provision the Supreme Court stated:

... the petitioner argues that it is impossible to predict future behavior and that the question is so vague as to be meaningless. It is, of course, not easy to predict future behavior. The fact that such a determination is difficult, however, does not mean that it cannot be made. Indeed, prediction of future criminal conduct is an essential element in many of the decisions rendered throughout our criminal justice system. The decision whether to admit a defendant to bail, for instance, must often turn on a judge's prediction of the defendant's future conduct. And any sentencing authority must predict a convicted person's probable future conduct when it engages in the process of determining what punishment to impose. For those sentenced to prison, these same predictions must be made by parole authorities. The task that a Texas jury must perform in answering the statutory question in issue is thus basically no different from the task performed countless times each day throughout the American system of criminal justice. What is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine. Texas law clearly assures that all such evidence will be adduced.

We find that this aggravating circumstance was properly presented to the jury for its consideration.

## IX.

The appellant next contends that the trial court erred by allowing the State to present evidence that Johnson had committed a separate and unrelated murder. He asserts that the evidence pertaining to this unrelated murder, of which he had not been convicted at the time of this trial, denied him

---

1. "Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; ..." Tex.Code Crim.Proc., Art. 37.071 (Supp.1976).

due process of law. The record reflects that in the punishment stage the State introduced a tape recording which contained the appellant's confession to the killing of Steven Lawrence. On June 29, 1979, Johnson was taken to the Tulsa Police Department for questioning in regard to the Steven Lawrence killing. The Lawrence killing occurred on June 8, 1979, just ten days prior to the robbery-murder at the U-Tote-M store. Johnson confessed that he met Lawrence at Chamberlain Park to buy some marijuana. He stated that he shot Lawrence because he thought Lawrence was going to get a gun out of the car trunk. Johnson shot him three times.

The State also introduced evidence that Johnson had been involved in a race riot in which he killed Cecil Ray and Kris Cavcaros. The State introduced evidence of these unadjudicated offenses through the testimony of Officer Parke. Parke testified that he had investigated the race riot and Johnson admitted to having shot both Ray and Cavcaros. These shootings took place on June 7, 1979. Officer Parke also testified that Johnson admitted hitting a young woman in the back of the head with a baseball bat, later that same day.

■ Generally, evidence of unrelated crimes is not admissible in a criminal trial. *Burks v. State,* 594 P.2d 771 (Okl.Cr.1979). Several reasons exist for the exclusion of "other crimes evidence" at the guilt stage of the trial. First, a defendant who is placed on trial for an offense should only be convicted by evidence which establishes that he is guilty of that offense, and not by evidence of totally unrelated offenses. Second, a defendant should not be convicted of one offense because he has committed other crimes or because he is a bad person. Lastly, evidence of unrelated crimes generally unduly prejudices the jury. *See Wharton's Criminal Evidence,* § 240 (13th Ed. 1972).

This Court finds that relevant evidence of other crimes is appropriate in the punishment stage to enable the jury to make a knowing and intelligent decision as to whether a defendant should be sentenced to life imprisonment or impose the death penalty.

■ Title 21 O.S.Supp.1980, § 701.10, provides that in "the sentencing proceeding, evidence may be presented as to any mitigating circumstances or as to any of the aggravating circumstances enumerated in this act." In this case, the State was required to prove beyond a reasonable doubt that Johnson would constitute a continuing threat to society. We find that evidence of a defendant's criminal record, or prior unadjudicated acts of violent conduct is relevant to the determination of whether the defendant is likely to commit future acts of violence that would constitute a continuing threat to society.

The United States Supreme Court in *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), spoke on the admissibility of evidence at the separate capital sentencing proceeding. The Supreme Court held that "[a] jury must be allowed to consider on the basis of all relevant evidence not only why a death sentence should be imposed, but also why it should not be imposed." In *Jurek v. Texas, supra,* the Supreme Court further asserted:

> In determining the likelihood that the defendant would be a continuing threat to society, the *jury could consider whether the defendant had a significant criminal record.* It could consider the range and severity of his prior criminal conduct. It could further look to the age of the defendant and whether or not at the time of the commission of the offense he was acting under duress or under the domination of another... (Quoting *Jurek v. State,* 522 S.W.2d 934, 939 (Tex.1975). (Emphasis added)

This Court also finds persuasive the language used by the drafters of the Model Penal Code. Section 210.6 of the Model Penal Code provides in part:

> In the proceeding, [sentencing] evidence may be presented as to any matter that the Court deems relevant to sentence, including but not limited to the nature and circumstances of the crime, the de-

fendant's character, background, history, mental and physical condition and any of the aggravating or mitigating circumstances enumerated in ... this Section. Any such evidence, not legally privileged, which the Court deems to have probative force, may be received, regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant's counsel is accorded a fair opportunity to rebut such evidence. The prosecuting attorney and the defendant or his counsel shall be permitted to present argument for or against sentence of death.

Therefore, it is not necessary there be a final conviction for an unrelated criminal offense to be admissible at the sentencing stage. Prior criminal activity is relevant to the jury determination on the aggravating circumstance the defendant would constitute a continuing threat to society. It is "essential that the jury have before it all possible relevant information about the individual defendant whose fate it must determine." *Jurek v. Texas, supra.* The evidence of the Lawrence killing was properly admitted.

### X.

■ Next it is claimed that the trial court erred by excluding the testimony of J.R. Williams and Ida Williams. The appellant attempted to introduce testimony of the Williams to establish that the Steven Lawrence killing was in self-defense. At the *in camera* hearing it was revealed that the Williams intended to testify that some black man had been involved in an altercation with B.J. Titsworth. This testimony tended to corroborate Titsworth's testimony that he had been in a fight with Steven Lawrence, at which time Lawrence told Titsworth he intended to kill Kenneth Johnson. The trial court ruled that this evidence was inadmissible because Williams could not positively identify Steven Lawrence as the person involved in the altercation with Titsworth. We disagree.

This Court finds that the evidence was relevant as it tended to prove the appellant's theory of the Steven Lawrence homi-cide. *See* 12 O.S.Supp.1980, § 2401. The evidence should have been admitted in mitigation of the death penalty. *See Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), in which the Supreme Court stated that a sentencer should "not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record of any circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Therefore, we hold that the trial court erred in limiting the testimony of J.R. and Ida Williams.

### XI.

■ It is alleged that the State did not properly inform the appellant of its intent to introduce evidence of the Ray and Cavcaros killings. Title 21 O.S.Supp.1980, § 701.-10, provides that "[i]n the sentencing proceeding, evidence may be presented as to any mitigating circumstances or as to any aggravating circumstances ... Only such evidence in aggravation as the State has *made known to the defendant prior to his trial* shall be admissible ..." [Emphasis added.]

Due process of law under the Fourteenth Amendment of the United States Constitution requires that a defendant be notified as to what the State intends to prove at trial. Admitting evidence of unadjudicated criminal offenses requires the defendant to defend against more than one charge in the sentencing proceeding. Fair play and substantial justice mandates that a defendant be provided with notice when the State intends to offer evidence of unadjudicated criminal offenses. Notice prior to trial allows the defendant time to present a defense or an explanation for the alleged criminal conduct. We find that the trial court erred in admitting the evidence of the Ray and Cavcaros killings since the State failed to give the appellant adequate notice prior to trial.

### XII.

■ The appellant claims that there was insufficient evidence to sustain the

jury's finding that the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution. *See* 21 O.S.Supp.1980, § 701.12(5). In the sentencing stage the State is required to prove beyond a reasonable doubt at least one aggravating circumstance before the jury may recommend the death penalty. 21 O.S. Supp.1980, § 701.11. When ruling on a motion for directed verdict in the sentencing stage of a capital trial the trial court must determine whether there is any competent evidence to support the State's charge. If there is evidence from which the jury could find that the alleged aggravating circumstance exists, then the trial court should deny the motion for directed verdict. In this case there was sufficient evidence to support the jury's finding that the murder was committed to avoid lawful arrest or prosecution.

### XIII.

■ We will finally address the issue of whether the facts at bar were sufficient to support the State's alleged aggravating circumstance that the appellant "committed the murder for remuneration or the promise of remuneration." The State asserts that the murder was for remuneration since the killing occurred during a robbery in which money was obtained. We find that the statutory language in Title 21 O.S.1980, § 701.12(3), does not apply in a robbery-murder situation. The statute provides that:

Aggravating circumstances shall be:
*   *   *   *   *   *

3. The person committed the murder for remuneration or the promise of remuneration or employed another to commit the murder for remuneration or the promise of remuneration.

The crucial determination is what the Oklahoma Legislature meant by the phrase "murder for remuneration." Generally, legislative enactments will be interpreted in accordance with their plain ordinary meaning to effectuate the purpose intended to be accomplished. *See Abshire v. State,* 551 P.2d 273 (Okl.Cr.1976). The generally ac-

cepted meaning of the term "remuneration" is to pay an equivalent for, i.e., to reimburse for a service, loss, or expense. It is also used to connote payment for services performed. *See* Webster's *New Collegiate Dictionary* (1973).

We find that the traditional application for this aggravating circumstance has been where a defendant has been hired or has hired another person to perform an act of murder. *See McManus v. State,* 591 S.W.2d 505 (Tex.Cr.1979); *Doty v. State,* 585 S.W.2d 726 (Tex.Cr.1979). Murder for remuneration has also been applied to killings motivated primarily to obtain proceeds from an insurance policy, murder of a testator in order to secure a devise or legacy, and killings which occur in a kidnapping-extortion situation. *See Chaney v. State,* 612 P.2d 269 (Okl.Cr.1980); *O'Bryan v. State,* 591 S.W.2d 464 (Tex.Cr.1979).

We conclude that the aggravating circumstances that the murder was committed for remuneration was improper in this case. The murder was not committed for remuneration even though the killing of the store clerk facilitated Johnson's efforts to obtain money from the robbery. To hold otherwise would require this Court to construe the language "murder for remuneration" beyond its plain ordinary meaning.

### XIV.

The trial court erred in instructing the jury on the aggravating circumstance that the murder was committed for remuneration. As discussed in Proposition XIII, the evidence in this case does not support such an aggravating circumstance instruction. The question now becomes what is the appropriate procedure for this Court to follow. We find that there are three possible procedures available to this Court. First, we could set the sentence aside and remand the case for modification to life imprisonment. Second, this Court could attempt to determine whether the error was harmless beyond a reasonable doubt. A third possibility would be to remand the case to the trial

court to impanel a new jury for a resentencing proceeding.

We will first address the propriety of attempting to determine whether the consideration by the jury of the improper aggravating circumstances was harmless error. Where an appellant's life is at issue this Court is unwilling to speculate as to whether an improper sentencing consideration had any impact on the jury's decision to recommend the death penalty. In the sentencing proceeding the jury is required to weigh the appropriate aggravating circumstances against the relevant mitigating circumstances. *See* 21 O.S.Supp.1980, § 701.11. Based upon this weighing process the jury must determine whether the defendant should receive the death penalty. The jury's discretion must be channeled by clear and objective standards that make the death penalty rationally reviewable. *See Woodson v. North Carolina,* 428 U.S. 280, 303, 96 S.Ct. 2978, 2990, 49 L.Ed.2d 944 (1976). We conclude that it is impossible for an appellate court to find beyond a reasonable doubt that the jury's erroneous consideration of an aggravating circumstance was harmless error.[2]

We now consider whether this Court has the statutory authority to remand a death penalty case to the trial court to conduct a resentencing proceeding before a new jury. We find that this Court has the authority to remand for a new sentencing trial to correct errors which occurred in the sentencing proceeding.

Title 21 O.S.Supp.1980, § 701.13(E) provides in part:

In *addition* to its authority regarding correction of errors, the court, with regard to review of death sentences, shall be authorized to:

1. Affirm the sentence of death; or

2. Set the sentence aside and remand the case for modification of the sentence to imprisonment for life. [Emphasis added.]

This statute specifically states that the authority provided in this section is in addition to our authority to correct errors. This Court's powers to correct error are enumerated in 22 O.S.1971, § 1066. This statute provides "[t]he Appellate Court may reverse, affirm or modify the judgment appealed from, and may, if necessary or proper, order a new trial. In either case, the cause must be remanded to the court below, with proper instructions, and the opinion of the court, within the time, and in the manner, to be prescribed by rule of the court."

We find that 21 O.S.Supp.1980, § 701.13(E), read in conjunction with 22 O.S.1971, § 1066, provides this Court with the statutory authority to remand this case for a new sentencing proceeding.[3] Title 21 O.S. Supp.1980, § 701.10, makes it clear that the

---

**2.** *See Bufford v. State,* 382 So.2d 1162 (Ala.Cr. 1980); and *State v. Cherry,* 298 N.C. 86, 257 S.E.2d 551 (1979), in which both Alabama and North Carolina refused to speculate as to the effect an improper aggravating circumstance had on the jury's decision to recommend the death penalty.

**3.** Several jurisdictions have enacted statutory provisions for the appellate court to remand a case for a new sentencing proceeding. See, e.g., Ala.Code Supp.1981, Tit. 13A, § 5–53, which mandates:

(d) After performing the review specified in this section, the Alabama court of criminal appeals, subject to review by the Alabama Supreme Court, shall be authorized to:

(1) Affirm the sentence of death;

(2) Set the sentence of death aside and remand to the trial court for correction of any errors occurring during the sentence proceedings and for imposition of the appropriate penalty after any new sentence proceedings that are necessary, provided that such errors shall not affect the determination of guilt and shall not preclude the imposition of a sentence of death where it is determined to be proper after any new sentence proceedings that are deemed necessary; or

(3) In cases in which the death penalty is deemed inappropriate under subdivision (b)(2) or (b)(3) of this section, set the sentence of death aside and remand to the trial court with directions that the defendant be sentenced to life imprisonment without parole.

*See also,* Ga.Code, § 27–2537 (Supp.1978); Md. Code Ann., Art. 27, § 414(f)(ii) (Supp.1978); Mo.Rev.Stat. § 565.014 (Supp.1977); Mont. Rev.Codes Ann. § 94–5–303 (Supp.1977); S.C. Code § 16–3–25 (Supp.1980); Wyo.Stat. § 6–4–102(g) (Supp.1977). *See also, Nipps v. State,* 626 P.2d 1349 (Okl.Cr.1981).

sentencing proceeding is separate and distinct from the initial trial adjudicating the defendant's guilt. Section 701.10 states:

Upon conviction or adjudication of guilt of a defendant of murder in the first degree, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death or life imprisonment. The proceeding shall be conducted by the trial judge before the trial judge as soon as practicable without presentence investigation ... In the sentencing proceeding, evidence may be presented as to any mitigating circumstances or as to any of the aggravating circumstances enumerated in this act. Only such evidence in aggravation as the state has made known to the defendant prior to his trial shall be admissible.

Therefore, we conclude that this case may be remanded solely for a resentencing trial. At the resentencing proceeding the district court shall impanel a new jury. After voir dire has been completed the sentencing proceeding shall be conducted in accordance with Title 21 O.S.Supp.1981, §§ 701.10–701.12. The State may present relevant evidence in regard to any applicable aggravating circumstances enumerated in Section 701.12 of which the State has notified the defendant pursuant to Section 701.10. The defendant may present evidence of any mitigating circumstances.

BRETT, P.J., concurs.

BUSSEY, J., concurs in results.

### OPINION ON REHEARING

CORNISH, Judge:

On March 30, 1982, the appellant filed a petition for rehearing in the above styled and numbered case. Upon reconsideration of our opinion issued on March 12, 1982, we find it necessary to withdraw that portion of the opinion which directs the case to be remanded solely for a resentencing trial.

There is no official legislative history available on the drafting of the bill [1] re-en-

acting the death penalty provision in Oklahoma. It appears, however, that the Oklahoma Legislature used as a model the statutory scheme which had been recently upheld by the U.S. Supreme Court in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Within days of the decision, an extraordinary session of the Oklahoma Legislature was convened solely for the purpose of enactment of a new death penalty statute. Language of the Oklahoma section providing for review of death sentences is almost identical to that in Code Ga. § 27–2537. Part (E) of the corresponding Oklahoma provision, discussed infra, departs significantly, however, from the Georgia provision, Section 27–2537(e), which authorizes the reviewing court to:

(1) Affirm the sentence of death; or

(2) Set the sentence aside and remand the case for resentencing by the trial judge based on the record and argument of counsel. The record of those similar cases referred to by the Supreme Court in its decision and the extracts prepared as provided for in subsection (a) of Code Section 17–10–37 shall be provided to the resentencing judge for his consideration.

Had the Oklahoma Legislature intended to provide for retrial of the sentencing proceeding only, as did Georgia, then it could have enacted a similar procedure.

■ Under Oklahoma death penalty statutes the sentencing proceeding must be conducted before the same jury which adjudicated the defendant's guilt. Title 21 O.S. 1981, § 701.10 provides:

Upon conviction or adjudication of guilt of a defendant of murder in the first degree, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death or life imprisonment. The *proceeding shall be conducted by the trial judge before the trial jury as soon as practicable* without presentence investigation. If the trial jury has been waived by the defendant and the state, or if the

---

**1.** S.B. No. 1 approved July 23, 1976, in the First

Extraordinary Session of the 35th Legislature.

defendant pleaded guilty or nolo contendere, the sentencing proceeding shall be conducted before the court. . (Emphasis added.)

We are now convinced that a plain reading of 21 O.S.1981, § 701.13, does not authorize this Court to remand a death case, tried before a jury, solely for a resentencing before a different jury, even when error occurs only in the sentencing stage. Section 701.13(E) provides that with regard to review of death sentences this Court shall be authorized to:

1. Affirm the sentence of death; or
2. Set the sentence aside and remand the case for modification of the sentence to imprisonment for life.

Therefore, since this Court is unwilling to speculate as to the effect the improper aggravating circumstance, murder for remuneration, had on the jury's recommendation to impose the death penalty, we find it necessary to modify the sentence to life imprisonment in accordance with Section 701.13(E). When prejudicial error occurs in the sentencing stage of the trial only, this Court has consistently modified the death sentence to life imprisonment and otherwise affirmed. See *Odum v. State,* 53 OBAJ 2264, 651 P.2d 703 (Okl.Cr.1982); *Burrows v. State,* 640 P.2d 533 (Okl.Cr.1982); *Irvin v. State,* 617 P.2d 588 (Okl.Cr.1980). See also our opinion handed down today in *Boutwell v. State,* 659 P.2d 322 (Okl.Cr. 1983), in which this Court reached the same result on these grounds.

The judgment is AFFIRMED, except as to the imposition of the death sentence; the death sentence is vacated and the case is REMANDED to the District Court of Tulsa County for MODIFICATION of the sentence to life imprisonment.

BRETT, J., concurs.

BUSSEY, P.J., concurs in part and dissents in part.

BUSSEY, Presiding Judge, concurring in part and dissenting in part:

I agree that the judgment should be affirmed, but I do not believe the majority correctly construes the legislative intent of our statute as prohibiting the remanding of a case for a resentencing hearing, or for a new trial when the only error occurs during the sentencing stage.