**Monty Lee EDDINGS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. C–78–325.**

Court of Criminal Appeals of Oklahoma.

July 30, 1984.

Rehearing Denied Oct. 12, 1984.

Jay C. Baker, Tulsa, for appellant.

Michael C. Turpen, Atty. Gen., David W. Lee, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

On April 4, 1977, the appellant, a sixteen-year-old juvenile, shot and killed Highway Patrol Trooper Crabtree on the Turner Turnpike with a sawed-off .410 gauge shotgun. The crime occurred when Trooper

Crabtree stopped appellant for a routine traffic violation. After the juvenile was certified to stand trial as an adult and the certification order was affirmed by this Court, *In re M.E.*, 584 P.2d 1340 (Okl.Cr. 1978), appellant, upon advice of counsel, waived a jury trial and entered a plea of nolo contendere. At the conclusion of the presentation of evidence relevant to sentencing, the trial court imposed the death sentence. That sentence was appealed to this Court and was affirmed. *Eddings v. State*, 616 P.2d 1159 (Okl.Cr.1980).

Thereafter, appellant sought and was granted a writ of certiorari by the United States Supreme Court in *Eddings v. Oklahoma*, 450 U.S. 1040, 101 S.Ct. 1756, 68 L.Ed.2d 237 (1980). The Honorable United States Supreme Court reversed our affirmance of the death penalty for the reason that, in their opinion, both the trial court and this Court violated the rule of *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), by placing limitations upon the mitigating circumstances to be considered. The Supreme Court directed that "[o]n remand, the State courts must consider all relevant mitigating evidence and weigh it against the evidence of the aggravating circumstances." *Eddings v. State*, 455 U.S. 104, 117, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). As this Court does not weigh evidence, *see, e.g., Woods v. State*, 569 P.2d 1004 (Okl.Cr.1977); *Tharps v. State*, 555 P.2d 1054 (Okl.Cr.1976), we remanded the case to the Creek County District Court for further proceedings in accordance with the directions of the United States Supreme Court. On August 25 and 26, 1982, the district court[1] heard additional evidence presented by appellant and again imposed the death penalty. From the order of August 26, 1982, this appeal has been lodged.

We now realize that it was error to remand the case to the district court for resentencing and that the death sentence must be modified to life imprisonment.

Upon rehearing *Johnson v. State*, 665 P.2d 815 (Okl.Cr.1982) we stated the following:

We are now convinced that a plain reading of 21 O.S.1981, § 701.13, does not authorize this Court to remand a death case, tried before a jury, solely for a resentencing before a different jury, even when error occurs only in the sentencing stage. Section 701.13(E) provides that with regard to review of death sentences this Court shall be authorized to:

1. Affirm the sentence of death; or
2. Set the sentence aside and remand the case for modification of the sentence to imprisonment for life.

Therefore, since this Court is unwilling to speculate as to the effect the improper aggravating circumstance, murder for remuneration, had on the jury's recommendation to impose the death penalty, we find it necessary to modify the sentence to life imprisonment in accordance with Section 701.13(E). When prejudicial error occurs in the sentencing stage of the trial only, this Court has consistently modified the death sentence to life imprisonment and otherwise affirmed. See *Odum v. State*, 53 O.B.A.J. 2264, 651 P.2d 703 (Okl.Cr.1982); *Burrows v. State*, 640 P.2d 533 (Okl.Cr.1982); *Irvin v. State*, 617 P.2d 588 (Okl.Cr.1980). See also our opinion handed down today in *Boutwell v. State*, 659 P.2d 322 (Okl.Cr. 1983), in which this Court reached the same result on these grounds.

*Id.* at 827.

Although *Johnson* has heretofore been limited in application to those cases in which the sentence is set by a jury, we believe that equal protection and due process require that the procedure obtain equally in cases in which the judge determines the sentence.

In finding Oklahoma's Habitual Criminal Sterilization Act unconstitutional, the United States Supreme Court stated:

---

**1.** On May 3, 1982, appellant sought issuance of the writ of prohibition in this Court to prevent the Honorable Charles S. Woodson from hearing the case on remand, insofar as he was the trial judge at appellant's trial. This Court denied the writ.

The guaranty of 'equal protection of the laws is a pledge of the protection of equal laws.' *Yick Wo v. Hopkins,* 118 U.S. 356, 369, 6 S.Ct. 1064, 1070, 30 L.Ed. 220. When the law lays an unequal hand on those who have committed intrinsically the same quality of offense and sterilizes one and not the other, it has made as an invidious a discrimination as if it had selected a particular race or nationality for oppressive treatment. *Yick Wo v. Hopkins,* supra; *Gaines v. Canada,* 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208. Sterilization of those who have thrice committed grand larceny with immunity for those who are embezzlers is a clear, pointed, unmistakable discrimination. Oklahoma makes no attempt to say that he who commits larceny by trespass or trick or fraud has biologically inheritable traits which he who commits embezzlement lacks.... Only when it comes to sterilization are the pains and penalties of the law different. The equal protection clause would indeed be a formula of empty words if such conspicuously artificial lines could be drawn. See *Smith v. Wayne Probate Judge,* 231 Mich. 409, 420, 421, 204 N.W. 140, 40 A.L.R. 515.

*Skinner v. Oklahoma ex rel. Williamson,* 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655, 1660 (1942).

We find *Skinner* analogous to the present case. Two people can commit identical offenses, and if one is sentenced by a jury and one is sentenced by the trial court with identical errors occurring in both sentencing stages, one is guaranteed modification to life imprisonment while the other may yet be sentenced to death. This distinction presents a grossly unfair, unequal application of the law, especially since those who plead guilty or nolo contendere are not entitled to be sentenced by a jury. *See* 21 O.S. 1981, § 701.10. All cases in which error occurred only in the sentencing stage should be remanded for resentencing or none should be.

■ Inasmuch as this Court is without authority to remand jury-tried cases for resentencing under these circumstances, we must also modify to life imprisonment cases where the trial court erred in its imposition of the death penalty. Equality in appellate disposition is especially important in this area as defendants who plead guilty or nolo contendere are not entitled to be sentenced by a jury. *See* 21 O.S. 1981, § 701.10.

The death penalty rendered in this case must be, and hereby is, MODIFIED to life imprisonment. The other assignments of error raised need not be discussed in light of this decision.

PARKS, J., specially concurs.

BUSSEY, P.J., dissents.

PARKS, Judge, special concurrence:

I will preface my special concurrence in this case by noting that I was not sitting on this honorable court when this case was orginally decided. After a careful review of the record, the Supreme Court decision, and hearing oral argument, I feel qualified to express the following opinion in concurrence.

At the outset, I agree with Judge Brett's majority position that remanding the case for resentencing was in error, and that modifying the sentence to life is appropriate in this instance. The unequal treatment of those who select a jury trial and those who waive jury trials flies in the face of fairness and equal protection under the law. Modification for errors in sentencing is the proper remedy in either non-jury or jury trial situations. I also agree with *Woods v. State,* 569 P.2d 1004 (Okl.Cr. 1977), which makes it clear that the Court of Criminal Appeals does not weigh evidence. I feel, however, an obligation to comment on the evidence in mitigation, and feel compelled to express my concerns for the treatment of a juvenile offender as is involved in this case.

Although it is unnecessary as to the disposition of this case to comment on important mitigating factors, the Supreme Court,

in *Eddings v. State*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), found that "the evidence Eddings offered was relevant mitigating evidence." *Id.* at 115, 102 S.Ct at 877. The court also said that to exclude any mitigating evidence as a matter of law violated that court decision in *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 793 (1978).

Noting that the Supreme Court found error in the sentencing proceeding and remanded with specific instructions to consider all mitigating circumstances, certainly that Court found merit in the mitigation arguments.

The Supreme Court made it very clear that there were important mitigating factors that should have been considered in sentencing the appellant.

The appellant in this case was sixteen years old at the time of the murder. There was also evidence of a turbulent family background. The Supreme Court succinctly summarized the age factor as follows:

"Even the normal 16-year-old customarily lacks the maturity of an adult. In this case, Eddings was not a normal 16-year-old; he had been deprived of the care, concern, and paternal attention that children deserve. On the contrary, it is not disputed that he was a juvenile with serious emotional problems, and had been raised in the neglectful, sometimes even violent, family background. In addition, there was testimony that Eddings' mental and emotional development were at a level several years below his chronological age. All of this does not suggest an absence of responsibility for the crime of murder, deliberately committed in this case. Rather, it is to say that just as the chronological age of a minor is itself a relevant mitigating factor of great weight, so must the background and mental and emotional development of a youthful defendant be duly considered in sentencing."

*Eddings v. State*, 455 U.S. 104, 116, 102 S.Ct. 869, 877, 71 L.Ed.2d 1.12 (1982).

The chronological age of the appellant must be examined with an understanding of the uniqueness of that stage of development of a youth. The court cites various journal articles and reports that relate to the unique period of social and mental development existing in teenagers. A pertinent article is contained in footnote 11 of the opinion, which, in part, is as follows:

"[A]dolescents, particulary in the early and middle teen years, are more vulnerable, more impulsive, and less self-disciplined than adults. Crimes committed by youths may be just as harmful to victims as those committed by older persons, but they deserve less punishment because adolescents may have less capacity to control their conduct and to think in long-range terms than adults. Moreover, youth crime as such is not exclusively the offender's fault; offenses by the young also represent a failure of family, school, and the social system, which share responsibility for the development of America's youth." Twentieth Century Fund Task Force on Sentencing Policy Toward Young Offenders, Confronting Youth Crime 7 (1978).

In fact, the court also states that "Our history is replete with laws and judicial recognition that minors, especially in their earlier years, generally are less mature and responsible than adults." *Eddings v. Oklahoma, Id.* at 115, 116, 102 S.Ct. at 877, 71 L.Ed.2d at 11.

The general concern for the treatment of youth in our society should not be taken lightly. The State of Oklahoma has enacted a juvenile system which is designed to reform and rehabilitate juveniles that have broken laws. Oklahoma has taken many steps to protect juveniles, as have most jurisdictions of the United States.[1] The chronological age of the juvenile involved, coupled with the emotional and mental development of the juvenile, are important factors when dealing with any person, and becomes especially important when dealing with juveniles. The concern and care for juveniles is important to the very existence

1. See *In re Gault*, 387 U.S. 1, 14, 87 S.Ct. 1428, 1436, 18 L.Ed.2d 527 (1967).

of society, and laws and social structures designed to protect and benefit juveniles are potentially the areas of greatest triumph for our system of justice. "The spectacle of our society seeking legal vengeance through execution of a child raises fundamental questions about the nature of children's moral responsibility for their actions and about society's moral responsibility to protect and nuture children." [2] The case of Monty Lee Eddings is an example of why our system of justice exists. Applied properly, juveniles will be protected and nurtured, and when necessary, the proper punishments assessed.

It is pertinent to note that Oklahoma has not executed any juveniles for crimes which they have committed. Now is not the time to begin. The evidence of mitigation in this case should have weighed heavily in the minds of the fact finder. A life sentence, rather than death, is appropriate punishment. It is not excusing the crime to modify the sentence to life. Life imprisonment, under the circumstances, is punishment enough for this child.

BUSSEY, Presiding Judge, dissenting:

I must respectfully dissent. My dissent is predicated upon my belief that the majority in *Johnson v. State*, 665 P.2d 815 (Okl. Cr.1982), incorrectly interpreted our statute to prohibit the remanding of a case for a resentencing hearing when the only error occurred during the sentencing stage. The instant case would provide an excellent opportunity to expressly overrule *Johnson*, supra, and carry out the clear legislative intent. Moreover, I find nothing in the opinion of the U.S. Supreme Court that mandates automatic modification from death to life because of the age of the defendant.

I strongly recommend that the Oklahoma Legislature consider amending our death penalty statute in order to express its intent with *unmistakable certainty*. (Emphasis added) A select committee of the legislature could carefully study the recent

decisions of the U.S. Supreme Court affirming the death penalty, in order to eliminate technical constructions which preclude its just enforcement. See for instance, *Spaziano v. Florida*, —— U.S. ——, 104 S.Ct. 3154, 82 L.Ed.2d 340, handed down on July 2, 1984, wherein a majority of the Supreme Court upheld the Florida capital punishment sentencing procedure.

## OPINION ON REHEARING

BRETT, Judge:

Upon petition for rehearing, and on behalf of the State of Oklahoma, the Attorney General's office urges this Court to overrule *Johnson v. State*, 665 P.2d 815 (Okl.Cr.1983), and reinstate Monte Lee Eddings' sentence of death, or, in the alternative, to apply a rational basis analysis and distinguish *Johnson*—a case tried by jury—from judge-tried cases. We decline to do either.

In *Johnson v. State*, this Court interpreted the intent of the Legislature in regard to our death penalty statutes and concluded that "[h]ad the Oklahoma Legislature intended to provide for retrial of the sentencing proceeding only, as did Georgia, then it could have enacted a similar procedure." 665 P.2d at 826. In his dissent in the instant case, Judge Bussey states his belief that

the majority in *Johnson v. State*, 665 P.2d 815 (Okl.Cr.1982), incorrectly interpreted our statute to prohibit the remanding of a case for a resentencing hearing when the only error occurred during the sentencing stage. The instant case would provide an excellent opportunity to expressly overrule *Johnson*, supra, and carry out the clear legislative intent.

▪ When this Court handed down its decision in *Johnson*—February 8, 1983— the Oklahoma Legislature was still in session. The Oklahoma Legislature could have then, or in its most recent session, enacted a procedure for resentencing had it

**2.** "Death Penalty for Children: The American Experience with Capital Punishment for Crimes Committed while Under Age Eighteen," 36 Okla. L.Rev. 613 (1983).

felt that this Court had misinterpreted the legislative intent. The Oklahoma Legislature did not do this. Thus, we must conclude that the *Johnson* interpretation was correct, and that we have carried out the clear legislative intent. Our decision upon rehearing *Johnson* is therefore reaffirmed.[1]

█ Arguing that there is no claim of a fundamental right violation in the present case, the Attorney General argues that a rational basis analysis should be applied rather than strict judicial scrutiny. We deem strict scrutiny essential in examining a law that would afford greater protection to one class of citizens—those who are sentenced to death by jury—than another— those who are sentenced to death by the court. Therefore, we do not consider the State's argument to be persuasive.

As the State has offered no compelling justification for the distinction urged, the sentence of death must be, and is, MODI-FIED. The court clerk is ordered to issue the mandate forthwith.

PARKS, J., specially concurs.

PARKS, Judge, specially concurring.

I specially concur due to dicta in footnote #1. I do not agree with the principles found therein.

---

1. This holding does not affect our ruling in *Nipps v. State*, 626 P.2d 1349 (Okl.Cr.1981), wherein the case was remanded for resentencing after the enhancement provision under which the defendant was sentenced was determined to be unconstitutional and the crime provided no minimum sentence. In the present case there is a minimum sentence, that is, life imprisonment. Furthermore, as a death penalty case is unique in its severity and punishment, the courts are particularly sensitive to insure that every safeguard is observed. *See Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).